**Flanders JORDAN, Petitioner–Appellant,**

v.

**Eugene S. LEFEVRE, Respondent–Appellee.**

**Docket No. 99–2038.**

United States Court of Appeals, Second Circuit.

Submitted Nov. 9, 1999

Decided March 20, 2000

As Amended May 8, 2000

Randall D. Unger, Kew Gardens, New York, filed a brief for Petitioner–Appellant.

Ilisa T. Fleischer, Assistant District Attorney, New York, New York (Robert M. Morgenthau, District Attorney, Donna Krone, Assistant District Attorney, New York County, New York, New York, of counsel), filed a brief for Respondent–Appellee.

Before: WINTER, Chief Judge, CARDAMONE, and STRAUB, Circuit Judges.

CARDAMONE, Circuit Judge.

Petitioner Flanders Jordan, a black defendant, appeals from a judgment entered October 15, 1998 in the United States District Court for the Southern District of New York (Mukasey, J.) that denied his petition for a writ of habeas corpus. Petitioner makes several claims on this appeal, but the principal one is that the prosecutor at his state court trial denied him the right to equal protection of the law through the use of peremptory challenges of potential black jurors under the teaching of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Because peremptory challenges may allow "those to discriminate who are of a mind to discriminate," *id.* at 96, 106 S.Ct. 1712, (quoting *Avery v. Georgia,* 345 U.S. 559, 562, 73 S.Ct. 891, 97 L.Ed. 1244 (1953)), it is the duty of the trial court to inquire into the motivation for the peremp-

tory challenge when a defendant makes a *prima facie* showing of racial discrimination in the prosecutor's pattern of peremptory strikes. A court insufficiently protects the defendant's equal protection rights when in its haste to speed along the proceedings it declares that a reason is "rational" without making the critical determination as to purposeful discrimination that *Batson* requires. Such is what happened in the present case.

Without the accused's critical right to an impartially selected jury of his peers, the guarantee of trial by jury has little meaning. We are cognizant that in jury selection it behooves the trial judge to make his rulings promptly and on the spot, so to speak. The judge may not however so restrict defense counsel's arguments that the accused suffers the loss of an impartial jury at trial. The accused should not lose such a fundamental right because a trial judge is impatient.

### BACKGROUND

Petitioner and a co-defendant were accused of stabbing an acquaintance to death on a Manhattan subway train on November 19, 1989. Petitioner was charged with murder in the second degree and criminal possession of a weapon. He was convicted in 1991 after a jury trial in New York State Supreme Court, New York County, of manslaughter in the first degree (a lesser included offense) and sentenced to a prison term of 11 to 22 years. Petitioner took an unsuccessful direct appeal to the Appellate Division. *People v. Jordan,* 237 A.D.2d 141, 654 N.Y.S.2d 141 (1st Dep't 1997). His application for leave to appeal to the New York Court of Appeals was denied. *People v. Jordan,* 89 N.Y.2d 1095, 660 N.Y.S.2d 389, 682 N.E.2d 990 (1997). Jordan thereafter sought a federal writ of habeas corpus, asserting constitutional defects under *Batson* as well as in several other aspects of his state trial.

Among those other claims, petitioner maintains that the arresting officer lacked probable cause to arrest him, that he was

denied a fair trial because the trial judge improperly made comments during the *voir dire* regarding a defendant's right not to testify in his own behalf, and that the trial judge abused his discretion and coerced a verdict because he discharged one juror from jury service, but during the trial refused to discharge two others who said they had travel plans. The district court rejected these claims as procedurally barred because petitioner failed to raise them in his application for leave to appeal to the New York Court of Appeals.

### I Petitioner's Other Claims

■ We discuss these other claims first, and then the *Batson* claim. Jordan's petition with respect to the other claims just recited is controlled by *Grey v. Hoke,* 933 F.2d 117 (2d Cir.1991). In *Grey,* the petitioner's application letter for leave to appeal to the New York Court of Appeals urged a single claim. Attached to the application was petitioner's brief to the Appellate Division that contained two other claims. The application letter made no mention of these two points. *See id.* at 120. We held the application did not adequately present the other claims to the state's highest court, and thus were barred from federal review since they were unexhausted and procedurally defaulted in state court.

■ In this case, Jordan forcefully argued his *Batson* claim in the first three paragraphs of his application for leave, but made no reference to his other claims. In the fourth paragraph of his counsel's letter to the New York Court of Appeals he asked that he be given permission to appeal "[f]or all of these reasons and the reasons set forth in his Appellate Division briefs." Arguing a single claim at length and making only passing reference to possible other claims to be found in the attached briefs does not fairly apprise the state court of those remaining claims. *See Grey,* 933 F.2d at 120. We conclude, as did the district court, that arguing one

claim in his letter while attaching an appellate brief without explicitly alerting the state court to each claim raised does not fairly present such claims for purposes of the exhaustion requirement underlying federal habeas jurisdiction. Petitioner's counsel has the obligation to set out these arguments. Counsel may not transfer to the state courts the duty to comb through an applicant's appellate brief to seek and find arguments not expressly pointed out in the application for leave. Had appellant more clearly stated that he was pressing all of the claims raised in the attached brief, or had his letter made no argument in detail but rather only " 'request[ed that the Court of Appeals] consider and review all issues outlined in defendant-appellant's brief,' " the result here would be different and the remaining claims would have been fairly presented to the Court of Appeals. *Morgan v. Bennett,* 204 F.3d 360, 370–71 (2d Cir.2000). Thus, we affirm this portion of the judgment appealed from substantially for the reasons set out in Judge Mukasey's thorough opinion and order dated October 13, 1998. *Jordan v. Lefevre,* 22 F.Supp.2d 259, 266–69 (S.D.N.Y.1998).

## II *Batson* Claim

### A. *Proceedings in State Trial Court*

We turn now to petitioner's principal claim that he was denied equal protection of the law by the prosecutor's use of peremptory challenges striking several potential black jurors. *See Batson,* 476 U.S. at 79, 106 S.Ct. 1712. During the *voir dire* of potential jurors for his trial, Jordan's counsel objected to the prosecutor's use of peremptory challenges against several panelists, contending that the prosecutor was striking these potential jurors because they were black.

Counsel began his *Batson* application by stating "[m]y record indicates that the prosecutor has used ten challenges; of those ten challenges, five have been used to discharge black jurors out of a possible pool of people that have sat in the jury box of seven. I would submit to the Court—."

The trial judge cut him off, asking "[w]ho were the five black persons who were excused?" A short colloquy identified two black panelists excused for cause and three struck on peremptory challenges.

Before Jordan's defense counsel could make any argument to support a *prima facie* showing of discrimination, the trial judge stated, "in order to save us an awful lot of time, while I don't think it's necessary or required at the present time, I would ask [the prosecutor] to give me, if you have it, a non-racial basis for exercising the challenges." The prosecutor provided race neutral reasons for the three strikes. The trial judge then ruled "to the extent there is any application on the *Batson,* I'm denying it. It seems to me there is some rational basis for the exercise of the challenge."

Later in the *voir dire* defense counsel for Jordan's co-defendant attempted to make a statement regarding the *Batson* challenge. The trial judge told him "[y]ou've already ⋅ made your record." When counsel objected that "the record is not complete" the judge replied "do it very succinctly, because I'm not going to be spending more time in here listening to you." The judge himself challenged a fifth strike "for the record, for the various objections made by the defense," but found "there is a basis for the challenge" after the prosecutor offered a race neutral reason.

In his habeas corpus petition, Jordan avers the *Batson* proceedings were handled improperly. The district court found "no indication in the record that defense counsel was denied an opportunity to rebut the prosecutor's reasons for exercising his peremptory challenges." *Jordan,* 22 F.Supp.2d at 263. It held the *Batson* inquiry adequate based on the deference due to the trial court's finding that the prosecutor's peremptory challenges were race neutral. It is at this juncture that we part company from the respected district court judge.

## B. *Law Under Batson*

■ In assessing a challenge under *Batson*, a trial court must (1) decide whether the defendant has made a *prima facie* showing that the prosecutor has exercised a peremptory strike on the basis of race; (2) if so, decide whether the prosecutor has satisfied the burden of coming forward with a race neutral explanation for striking the potential juror; and, if so, then must (3) make a determination whether the defendant has carried his burden of proving purposeful discrimination. *See Batson,* 476 U.S. at 96–98, 106 S.Ct. 1712.

Examining these steps in some detail, we note that at the first step the defendant must show that the circumstances raise an inference of racial discrimination. Such an inference may stem, for example, from a pattern of strikes against minority jurors. *See id.* at 97, 106 S.Ct. 1712. In this case, three black members of the jury panel were challenged peremptorily by the prosecutor. And, as noted, the state trial judge ruled on the *Batson* application before defense counsel could present any argument regarding such challenges. Although a trial judge may rule on a *Batson* application even in the absence of a *prima facie* showing of discrimination, *see Hernandez v. New York,* 500 U.S. 352, 359, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991), the trial judge's actions here precluded a full record from being established and prevented a meaningful determination on the question whether the challenges demonstrated discriminatory intent.

■ There is no dispute regarding the trial court's conclusion that the reasons given for the prosecutor's peremptory challenges were race neutral. As such, they satisfy the prosecution's burden at the second *Batson* step. As the magistrate's report to the district court detailed, the reasons offered for the strikes in this case—negative experience with law enforcement, age, life experience, type of employment, and demeanor—have been found to be acceptable race neutral bases for peremptory challenges. *See Jordan,*

22 F.Supp.2d at 271–74 (citing cases). Nevertheless the *Batson* analysis recognizes that a race neutral reason may be rational and yet be a pretext for discrimination. *See Hernandez,* 500 U.S. at 363, 111 S.Ct. 1859.

■ Jordan now declares that the district court's conclusory statement that the prosecutor's explanations were race neutral did not satisfy *Batson*'s third step. We agree. The Supreme Court made clear in *Batson* that at the third step in the analysis the trial court has a "duty to determine if the defendant has established purposeful discrimination." *Batson,* 476 U.S. at 98, 106 S.Ct. 1712. The Court described this duty of assessing the credibility of the prosecutor's race neutral reasons as embodying the "decisive question" in the *Batson* analysis. *Hernandez,* 500 U.S. at 365, 111 S.Ct. 1859.

■ Hence, the third step of the *Batson* inquiry requires a trial judge to make "an ultimate determination on the issue of discriminatory intent based on all the facts and circumstances." *United States v. Alvarado,* 923 F.2d 253, 256 (2d Cir.1991). Although the trial judge's determination of discriminatory intent and credibility is ordinarily entitled to great deference, *see Batson,* 476 U.S. at 98 n. 21, 106 S.Ct. 1712, we recently emphasized a trial court's duty at the third stage to determine the credibility of the proffered explanations. *See Barnes v. Anderson,* 202 F.3d 150 (2d Cir.1999). There we held it was error for the trial court to deny a *Batson* motion without explicitly adjudicating the credibility of the non-moving or challenging party's race neutral explanations for its action in peremptorily striking potential jurors. *See id.* at 156–57.

■ We also have disapproved a trial court conducting its review of a *Batson* application with undue haste and ruling in a summary fashion. *See United States v. Stavroulakis,* 952 F.2d 686, 696 (2d Cir. 1992). In *Stavroulakis* we offered defense

counsel the opportunity, denied by the trial court, to articulate a *prima facie* case under *Batson.* Counsel in that case was unable to do so. In the case at hand, in contrast, Jordan can articulate a *prima facie* case of a racial basis for the peremptory strikes because he showed a potentially discriminatory pattern in the peremptory strike of three black panelists. On appeal he has argued that one black panelist, Mr. Taylor, was struck on the grounds that he was young and had no supervisory experience, while Ms. Timkin, a white panelist of the same age who had been in her job for only eight months and also had no supervisory experience was not challenged. Support for the notion that there was purposeful discrimination in the peremptory challenge may lie in the similarity between the characteristics of jurors struck and jurors accepted. Where the principal difference between them is race, the credibility of the prosecutor's explanation is much weakened. Although Jordon raised this issue in his state court appeals and in his petition below, neither the magistrate's report nor the district court's opinion addressed his argument. Jordan's challenge alleging discrimination in jury selection is sufficient to warrant a determination whether the prosecutor's proffered reasons were pretextual.

The state trial judge presiding at Jordan's trial was not in a position to make the requisite determination as to discriminatory intent. In an effort to save "an awful lot of time" he ruled summarily on the *Batson* application after an extremely brief colloquy, and resisted counsel's efforts to make arguments regarding the peremptory strikes so as to create a full record. The trial judge could not properly decide the third *Batson* step because he granted counsel no time to identify the relevant facts and assess the circumstances necessary to decide whether the race neutral reasons given were credible and nonpretextual. This cursory treatment of Jordan's *Batson* application was not a meaningful inquiry into "the decisive question ... whether counsel's race-neutral explanation for a peremptory challenge should be believed." *Hernandez,* 500 U.S. at 365, 111 S.Ct. 1859.

When there are many factors available upon which a trial court may rely, it may properly make a determination that the prosecutor did not discriminate on the basis of race, even absent a *prima facie* showing of discrimination. *See id.* at 369–70, 111 S.Ct. 1859. We have upheld a trial court's determination that race neutral reasons were not pretextual where the trial court reconstructed the *voir dire* at a hearing based only upon the prosecutor's testimony under cross-examination by defense counsel. *See Bryant v. Speckard,* 131 F.3d 1076, 1078–79 (2d Cir.1997), *cert. denied,* 524 U.S. 907, 118 S.Ct. 2066, 141 L.Ed.2d 143 (1998). But the limited record developed in the present case casts doubt on the trial court's ability to make the required finding regarding the prosecutor's intent, thereby undermining the deference due its conclusion. *See Brown v. Kelly,* 973 F.2d 116, 122 (2d Cir.1992).

The rule in *Batson* is meant to prevent prosecutors from striking jurors in criminal cases because they happen to be of the same race as the defendant. The letter of *Batson* requires the trial court to consider all relevant circumstances surrounding a defendant's *prima facie* showing of discrimination. *See Batson,* 476 U.S. at 96–97, 106 S.Ct. 1712. It imposes a duty on the trial court to make a determination whether the defendant established intentional discrimination. *See id.* at 98, 106 S.Ct. 1712.

The trial judge in this case made no effort to comply with the letter, much less the spirit, of *Batson.* Rather, he engaged in a perfunctory exercise designed to speed the proceedings along. Without hearing any argument from defense counsel, the judge declared it was not then necessary that the prosecutor provide a race neutral basis for his challenges, but asked him to provide one in order to save time. This does not constitute a meaningful inquiry into the question of discrimination. *Batson* requires a trial judge to ensure that a defendant on trial is afforded the equal protection of the law. This is

precisely what the trial court failed to do. Because the court did not make the required determination at the third *Batson* step, we must reverse the portion of the judgment that denied petitioner's habeas application based on a violation of *Batson*. We therefore direct the district court to, in its discretion, hold a hearing to reconstruct the prosecutor's state of mind at the time of jury selection, or if the passage of nine years since Jordan's trial and other circumstances should have made such a determination impossible or unsatisfactory, to order that the state grant Jordan a new trial. *See Tankleff v. Senkowski*, 135 F.3d 235, 250 (2d Cir. 1998).

## CONCLUSION

For the reasons stated, we affirm the judgment denying the writ, in part, and reverse it in part and remand with instructions to grant the writ for the violation of *Batson*.