**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2005

(Argued: October 19, 2005)

Decided: January 19, 2006
Errata Filed: February 22, 2006)

Docket No. 04-5311-pr

KASSAN SUPREME MESSIAH,

*Petitioner-Appellant*,

v.

PHILLIP DUNCAN, Superintendent of Great Meadow
Correctional Facility, ELIOT SPITZER, Attorney General of
the State of New York,

*Respondents-Appellees.*

BEFORE: JACOBS, CABRANES and SACK, *Circuit Judges.*

Petitioner appeals from a judgment of the United States District Court for the Southern

District of New York (Richard Conway Casey, *Judge*) dismissing his petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254. Petitioner contends that the prosecutor in his state court trial

exercised peremptory strikes against three jury panelists on impermissible discriminatory grounds in

violation of the Equal Protection Clause.

Affirmed.

Judge Jacobs concurs in a separate opinion.

1

RANDALL D. UNGER, Bayside, NY, *for Petitioner-Appellant.*

JOSEPH M. LATINO, Assistant District Attorney (Jeanine Pirro, District Attorney of Westchester County, Richard E. Weill, Chief Assistant District Attorney, Diane E. Selker, Assistant District Attorney, *on the brief*), Westchester County District Attorney's Office, White Plains, NY, *for Respondents-Appellees.*

JOSÉ A. CABRANES, *Circuit Judge*:

We consider here whether a trial court must make particularized findings in order to render a proper ruling on a challenge to the peremptory strike of a jury panelist brought pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986). We hold that a trial court can fulfill its duty to rule at the so-called "step three" of the *Batson* framework by expressing a clear intention to uphold or reject a strike after listening to the challenge, the race-neutral explanation and the arguments of the parties.

Petitioner Kassan Supreme Messiah appeals from an order of the United States District Court for the Southern District of New York (Richard Conway Casey, *Judge*) dismissing his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Messiah, who was convicted of several crimes, including murder, contends that the state trial court failed to rule on his *Batson* challenge to a peremptory strike the prosecutor exercised against a particular jury panelist. *See Batson*, 476 U.S. at 96-98. Messiah argues in the alternative that if the trial court did render a ruling on the striking of that panelist, the ruling was not supported by the record. Messiah also maintains that the trial court's rulings with respect to two other *Batson* challenges he asserted were not supported by the record.

For the reasons set forth below, we find Messiah's claims to be without merit. Accordingly, we affirm the District Court's dismissal of Messiah's petition.

BACKGROUND

On September 20, 1994, insurance agent Dennis Grasso was shot and killed in his Dobbs Ferry, New York office. In connection with that homicide, former professional boxer Kassan Supreme Messiah was indicted on two counts of murder in the second degree and one count each of robbery in the first degree, criminal possession of a weapon in the second degree and criminal use of a firearm in the first degree.

Messiah was tried by a jury in New York Supreme Court, Westchester County. On May 9, 1995, the jury convicted him on all counts. Messiah subsequently was sentenced principally to an indeterminate term of thirty-seven and a half years to life imprisonment, which he is currently serving. This appeal concerns Messiah's claims that certain peremptory strikes the prosecutor exercised against prospective jurors during voir dire were racially motivated.

## I.     Voir Dire

In the first panel of jurors examined, the prosecutor exercised a peremptory strike against John Woodbury, a social behavior counselor at a school for the deaf who had spent fourteen years teaching "young deaf men how to socially behave in society, independent living skills." Tr. of Voir Dire ("Tr."), Apr. 13, 1995, at 58. Woodbury's wife worked for a law firm involved in the practice of all types of law. When asked whether the firm's practice included criminal law, Woodbury responded, "I would assume. We don't talk about it." *Id.* at 59.

The prosecutor eliminated Woodbury among the first set of peremptory strikes; the following colloquy ensued:

THE COURT:     Three by consent. Perempts by the People.

MR. NEARY [prosecutor]: Two, three and four, eight and ten.

3

THE COURT: Is that it?

MR. ASLAKSEN [defense counsel]: Judge, I do have a motion with regard to number two [Woodbury].

. . . .

THE COURT: What do you want to say then?

MR. ASLAKSEN: I want to find out what the nonracial motivation is for the exercise of the peremptory challenge.

THE COURT: He wants to know why you are challenging number two.

MR. NEARY: Social work background, I think it would make him sympathetic to the defendant. His wife works for a law firm.

MR. ASLAKSEN: I would note, your Honor, for the record that he's the only black juror on the panel.

THE COURT: You can stop that nonsense. That's not true. Stop that. That is not true. He and number thirteen.

MR. ASLAKSEN: I was just going to say other than Mr. Smith, number thirteen, who is going to be excused by consent.

THE COURT: Anything else you wish to add?

MR. ASLAKSEN: Our striking?

THE COURT: With reference to these. That's five, five by the People.

*Id.* at 77-78. Before the second round of jury selection, defense counsel objected to the composition of the panel because it purportedly contained an inadequate representation of racial or ethnic minorities.[1] *Id.* at 85-87. Jury selection was thereafter adjourned for the weekend.

When jury selection continued the following Monday, defense counsel again objected to the composition of the panel on the ground that "I could only see one person of color in that panel in

---

[1] The trial judge rejected defense counsel's characterization of the panel, noting that "[t]here are at least five [minority jurors] . . . still remaining on the panel." Tr., Apr. 13, 1995, at 85.

4

the last row and there was in the first row another individual who I could not tell whether he was a person of color or not." Tr., April 17, 1995, at 48. The prosecutor disagreed with defense counsel's characterization of the panel, insisting that "I saw more than two people of color." *Id.* at 49. The prosecutor then went on to discuss the composition of the panel and elaborated further on his reasons for striking Woodbury:

> I excused one black male Mr. Woodbury on the basis of the fact that he was a behavioral scientist [sic] who worked with deaf children. He indicated also and I felt that fact indicated to me that he might be sympathetic to someone in a defendant's situation. He also indicated to me that his wife worked in a law office and he indicated that he had never spoken [to] his wife about her employment which I found hard to believe and also the fact that while counsel for defense and myself were considering our challenges during that period of time I observed him what appeared to be laughing and joking with a juror next to him Mr. Chicirelli and the record should reflect I excused both of those gentlemen on the basis I thought their laughing and joking was inappropriate given the seriousness of the charge.

*Id.* Defense counsel disputed that Woodbury and Chicirelli had been laughing and emphasized the importance to the defendant of "get[ting] some more people on the panel that would be people of color so as to be able to protect this defendant's rights." *Id.* at 50.

During a later round of jury selection, the prosecutor exercised a peremptory strike against panelist John Rodgers. The discussion concerning that strike occurred, in relevant part, as follows:

> MR. ASLAKSEN: Number one, Your Honor, I do want to ask the Court with regard to the last black juror who was peremptorily eliminated.
>
> THE COURT: You?
>
> MR. ASLAKSEN: That the People eliminated.
>
> THE COURT: Who are you talking about?
>
> MR. ASLAKSEN: Mr. Rodgers.
>
> THE COURT: What about him?
>
> MR. ASLAKSEN: He was a man of color.

MR. NEARY: I'm not aware of that.

THE COURT: Let him talk.

MR. ASLAKSEN: I wanted to ask the Court that we have the reason for the prosecution for the exercise of the peremptory challenge.

THE COURT: You've been saying that from the beginning and it's not a true statement. Do you wish to comment, Mr. Neary?

MR. NEARY: Other than I'm not aware that this gentleman is a man of color. I'm not aware from looking at him.

THE COURT: Whether he is or isn't, would you care to put a reason.

MR. NEARY: He's an investment banker in New York City. I saw him reading the newspaper during the course of the voir dire. Maybe it was stock quotations. He also expressed an interest in boxing above that of the average sports fan and, frankly, given the fact there are more jurors I think that are more qualified on the panel that's why I exercised a peremptory challenge.

MR. GIAMBOI [defense counsel]: It has to be specifically stated that it's obvious that the man is a man of color.

THE COURT: I've heard more about color from you people than we've had in the last year.

MR. GIAMBOI: With all due respect, I think it's most important in this case because of the nature and because of certain factors in the case that the Court be made aware of these objections that we draw. We don't do it arbitrarily.

THE COURT: All I can tell you is I look at Mr. Messiah here and I can see. So far I haven't seen anything unusual. I don't know what it is that you are referring to. If you have something to tell me, tell me. So far you've kept me in the dark.

MR. GIAMBOI: I told you in the past we honestly believe this man to be innocent.

THE COURT: What does that have to do.

MR. GIAMBOI: It's important he be judged by his peers. One of his peers would be a man of color on that jury.

THE COURT: You've had your say. You've had [your] say. The ruling stands.

Tr., Apr. 19, 1995, at 193-95.

6

Later in the selection process, the prosecutor exercised another peremptory strike against panelist Calvin Whitfield and defense counsel objected. *Id.* at 196-97. Without direction from the Court, the prosecutor immediately responded as follows:

> MR. NEARY: This particular juror was excused by the People on the basis of the fact that he apparently has an arrest in 1986 for obstructing governmental administration in Mount Vernon which he told us about and he plead [sic] guilty to disorderly conduct. He told us at the side bar he has four relatives currently in state prison. For those reasons I don't think he could be fair for the People.

*Id.* at 197. Defense counsel noted that Whitfield had recently been "involved with the police in helping the police with regard to juveniles in his town" and argued that therefore "any comment by the People with regard to the disorderly conduct plea or sentence I think is really not valid." *Id.* at 198. Whitfield was not seated as a juror.

After the full jury and two alternates had been selected, the prosecutor challenged panelist George Purnell for cause. During voir dire, Purnell recounted an incident in which he had been arrested; the police allegedly assaulted him and never charged him with a crime. He also discussed a different incident in which he was going to testify in court after his wife had been assaulted. The prosecutor had Purnell's wife, Purnell and other witnesses wait in a room. According to Purnell, the "judge threw the case out" because "we didn't show." *Id* at 207. When asked whether the prosecutor had acted improperly, Purnell responded, "She definitely did." *Id.* Purnell said that as a result of these experiences it would be difficult for him to be fair. The court seemed inclined to grant the prosecutor's for-cause challenge to Purnell, stating that it would "go with two alternates." *Id.* at 220. But after defense counsel vigorously objected on the ground that Purnell was the "last black juror that we've had," the prosecutor acquiesced to the seating of Purnell as the third alternate. *Id.* at 220-22.

7

Messiah did not challenge the prosecutor's attempts to strike any jurors other than Woodbury, Rodgers, Whitfield and Purnell. The jury that was seated did not include any members of racial minority groups except for Purnell, who, as an alternate, did not deliberate.

Following the completion of jury selection, a trial was held and Messiah was convicted on all counts of the indictment against him. He thereafter brought a motion, through counsel and *pro se*, to set aside the verdict pursuant to section 330.30 of the New York Criminal Procedure Law[2] on account of the prosecutor's allegedly discriminatory use of peremptory strikes in violation of the Equal Protection Clause of the Fourteenth Amendment and the doctrine of *Batson v. Kentucky*, 476 U.S. 79 (1986). The trial court denied that motion.

## II.  State Appellate Proceedings

Messiah appealed his conviction and among the contentions he raised was that the prosecutor had stricken panelists on the basis of race in violation of the Equal Protection Clause. The Appellate Division affirmed Messiah's conviction on February 9, 1998 in a decision that directly addressed certain of Messiah's contentions, but that disposed of his *Batson* claims with the following concluding sentence: "The defendant's remaining contentions, including those raised in his supplemental pro se brief, are either unpreserved for appellate review (*see,* CPL 470.05[2]; *People v. Allen*, 86 N.Y.2d 101, 111, 629 N.Y.S. 2d 1003, 653 N.E.2d 1173) or without merit." *People v. Messiah*, 247 A.D. 2d 490, 491 (2d Dep't 1998).

Messiah sought leave to appeal the Appellate Division's affirmance of his conviction to the New York Court of Appeals, but leave was denied on May 12, 1998. Messiah then filed a petition for a writ of error coram nobis in the Appellate Division, Second Department, contending that his

---

[2] New York Criminal Procedure Law section 330.30 provides in pertinent part that "[a]t any time after rendition of a verdict of guilty and before sentence, the court may, upon motion of the defendant, set aside or modify the verdict or any part thereof."

appellate counsel had provided ineffective assistance in failing to argue that Messiah's right to counsel had been denied because his attorney had allegedly been excluded from the room during the line-up in which Messiah was identified. That petition was denied in an order dated October 4, 1999. *People v. Messiah*, 265 A.D. 2d 346, 346 (2d Dep't 1999).

## III.    Federal Habeas Corpus Proceedings

On December 20, 1999, Messiah filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the District Court. Among the grounds he asserted in his petition, Messiah argued that his rights under the Equal Protection Clause of the Fourteenth Amendment were violated as a result of the prosecutor's alleged racially discriminatory use of peremptory strikes.

In a Report and Recommendation dated November 28, 2001, Magistrate Judge Henry Pitman recommended that all of Messiah's claims be dismissed, except his *Batson* claim relating to panelist John Woodbury. *Messiah v. Duncan*, No. 99 Civ. 12178, Report and Recommendation ("R&R"), at 53 (S.D.N.Y. Nov. 28, 2001). Judge Pitman determined that no independent and adequate state procedural bar precluded a federal court from reviewing Messiah's *Batson* claims. *See id.* at 15-16. Upon undertaking that review, Judge Pitman concluded that Messiah's claims concerning panelists John Rodgers and Calvin Whitfield were without merit because the trial court's rulings were supported by the record. *Id.* at 24-28. However, Judge Pitman recommended that an evidentiary hearing be held regarding the striking of panelist John Woodbury "[b]ecause the Trial Court never ruled on petitioner's *Batson* objection to the striking of Woodbury," which made it "impossible to determine whether the ruling would be supported by the record." *Id.* at 24.

The District Court accepted the recommendations of Judge Pitman in part and dismissed Messiah's petition in its entirety. *See Messiah v. Duncan*, No. 99 Civ. 12178, 2004 WL 1924791

(S.D.N.Y. Aug. 27, 2004). The Court agreed with Judge Pitman that the decision of the Appellate Division did not exhibit a sufficiently clear, independent and adequate state ground to preclude federal review of Messiah's *Batson* claims and that those claims—to the extent they concerned panelists Rodgers and Whitfield—lacked merit. *Id.* at *3-*5. But the District Court rejected Judge Pitman's determination that the state trial court had failed to rule on the *Batson* challenge to the striking of Woodbury, because "[t]he trial court dismissed Petitioner's claim of pretext when it directed defense counsel to 'stop that nonsense.'" *Id.* at *4. The District Court further concluded that the trial court's denial of Messiah's *Batson* challenge to the striking of Woodbury "was not clearly unreasonable." *Id.* at *5.

On January 7, 2005, a panel of this Court granted Messiah a certificate of appealability limited to his *Batson* claims, and this appeal followed.

## DISCUSSION

Messiah contends that the District Court erred in dismissing his petition because the trial court failed to rule on his *Batson* challenge to the striking of panelist Woodbury and because the trial court's rejection of his *Batson* claims relating to each of the three panelists at issue is not supported by the record. *See* Appellant's Br. 17-22. According to respondents, we need not address the merits of Messiah's contentions because he procedurally defaulted on his *Batson* claims, which were dismissed by the Appellate Division on independent and adequate state grounds. *See* Appellee's Br. 19-22. As it is not clear that the Appellate Division considered Messiah's *Batson* claims procedurally defaulted, we review those claims and conclude that they are without merit because the trial court ruled on the *Batson* challenge to the striking of Woodbury and because all three of the relevant *Batson* rulings are supported by the record.

10

**I.        The *Batson* Three-Step**

In *Batson v. Kentucky*, 476 U.S. 79 (1986), the Supreme Court fashioned a three-part burden-shifting framework that trial courts are to employ when ascertaining whether a particular peremptory strike of a jury panelist is based on an impermissible discriminatory motive in violation of the Equal Protection Clause of the Fourteenth Amendment. *See id.* at 96-98; *see also Rice v. Collins*, — U.S. —, 126 S. Ct. 969, 973-74 (Jan. 18, 2006). Initially, upon the assertion of an objection that a peremptory strike has been exercised in an unlawfully discriminatory manner, the movant must make a *prima facie* showing of circumstances that generate an inference that the relevant panelist was stricken on improper grounds. *See Batson*, 476 U.S. at 96-97. An oft-used method for such a showing is the description or discernment of a "pattern" of strikes against panelists who are members of particular protected groups. *See id.* at 97.

If the trial court is satisfied that the movant has made the requisite *prima facie* showing, the non-movant must then proffer a race-neutral explanation for striking the panelist. *See id.* This race-neutral explanation need not be "persuasive, or even plausible" for the non-movant to meet his obligation at step two of the *Batson* procedure and thereby advance the inquiry to the third step. *See Purkett v. Elem*, 514 U.S. 765, 768 (1995).

Once the non-movant has proffered his race-neutral explanation, the trial court must then determine whether the movant has satisfied his burden of proving that the relevant strike was exercised for discriminatory reasons. *See Batson*, 476 U.S. at 98. This third step "requires a trial judge to make an ultimate determination on the issue of discriminatory intent based on all the facts and circumstances." *Jordan v. Lefevre*, 206 F.3d 196, 200 (2d Cir. 2000) (internal quotation marks omitted).

11

Throughout the *Batson* procedure, the burden of proving that a strike was exercised on an impermissible discriminatory ground remains with the movant. *See McKinney v. Artuz,* 326 F.3d 87, 98 (2d Cir. 2003). The persuasiveness of the prosecutor's race-neutral explanation only becomes relevant at the third *Batson* step when the trial court must determine whether the movant has carried his burden of proving purposeful discrimination. *See id.* Ordinarily, at step three, "'the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed.'" *Id.* (quoting *Hernandez v. New York*, 500 U.S. 352, 365 (1991)).

## II. Adequate and Independent State Ground

Federal courts considering habeas corpus petitions are generally barred from reviewing the decisions of state courts insofar as those decisions are predicated on adequate and independent state procedural grounds. As the Supreme Court has explained, if a petitioner "defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

The preclusion of federal review applies only when "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996) (quotation marks omitted). It must be "clear from the face of the opinion" that the court intended to rely on the state procedural rule in disposing of the federal claim. *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000) (quoting *Coleman*, 501 U.S. at 735) (quotation marks omitted).

12

Respondents assert that we are foreclosed from reviewing Messiah's *Batson* claims because the Appellate Division disposed of them on adequate and independent state grounds—namely, the application of the rule of *People v. Allen*, 86 N.Y.2d 101 (1995). In *Allen*, the New York Court of Appeals held that the "ultimate burden of proof [of a party claiming a violation of *Batson* is] not satisfied" if he "raise[s] no claim of pretext" after the adverse party proffers a race-neutral reason for the relevant strike at step two of the *Batson* inquiry. *Id.* at 111. According to respondents, *Allen* is an adequate and independent state procedural rule on which the Appellate Division clearly relied in rejecting each of Messiah's *Batson* claims.

We need not decide whether *Allen* can be an adequate and independent state ground that would procedurally bar a habeas petition asserting *Batson* claims, because it is not at all clear in these circumstances that the Appellate Division relied on *Allen* in ruling on each of Messiah's *Batson* claims. *See DeBerry v. Portuondo*, 403 F.3d 57, 65-66 (2d Cir. 2005). By alleging that the characterization of panelist Whitfield's prior prosecution was "not valid," Tr., Apr. 19, 1995, at 198, Messiah's trial counsel effectively asserted a claim of pretext relating to at least part of the prosecutor's explanation for the striking of Whitfield. That fact, together with the ambiguity of the disjunctive language in the Appellate Division's "either/or" affirmance, *see DeBerry*, 403 F.3d at 64, prevent us from definitively concluding that the Appellate Division relied on *Allen* in disposing of any of Messiah's *Batson* claims in particular.[3] *See Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir. 2003) ("Generally when the Appellate Division opinion states that a group of contentions is either without merit 'or' procedurally barred, the decision does not disclose which claim in the group has been rejected on which ground."). As it is not "clear from the face of the opinion," *Fama*, 235 F.3d at

---

[3] As we did in *DeBerry v. Portuondo*, we continue to leave open the question of "whether sufficiently specific citations to the law or the record in an otherwise terse 'either/or' affirmance would allow us to find a clear procedural bar," because we conclude that "the citations are not sufficiently specific in this case," *DeBerry*, 403 F.3d at 64, notwithstanding the inclusion of citations to a specific page, 111, in *Allen* and to New York Criminal Procedure Law § 470.05[2] (contemporaneous objection requirement).

13

809, that the Appellate Division's judgment with respect to any one of Messiah's *Batson* claims was based on the rule of *Allen*, we are not precluded from reviewing the merits of those claims.

### III. Messiah's *Batson* Claims

### A. Standard of Review

We review *de novo* the District Court's decision to deny Messiah's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *McKinney v. Artuz*, 326 F.3d 87, 95 (2d Cir. 2003).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, modified the standard under which we review § 2254 petitions. *See McKinney*, 326 F.3d at 95. Prior to AEDPA's entry into force, when we considered a § 2254 petition concerning a *Batson* claim, we would review *de novo* the state court's conclusions of law, as well as its mixed findings of fact and conclusions of law. *See DeBerry v. Portuondo*, 403 F.3d 57, 67 (2d Cir. 2005). However, in accordance with the Supreme Court's directive in *Hernandez v. New York*, 500 U.S. 352 (1991), we would afford "great deference" to the state court's credibility assessment of a prosecutor's proffered race-neutral explanation for striking a juror. *DeBerry*, 403 F.3d at 67. That deference stems from the fact that the "best evidence" of the credibility *vel non* of a race-neutral explanation will "often . . . be the demeanor of the attorney who exercises the challenge," and such evaluations of demeanor "lie[ ] peculiarly within a trial judge's province." *McKinney*, 326 F.3d at 98 (quoting *Hernandez*, 500 U.S. at 365) (internal quotation marks omitted).

AEDPA reconfigured our standard of review in habeas cases, at least when the relevant claim has been "adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d), by requiring "more deferential" review, *Jenkins v. Artuz*, 294 F.3d 284, 286 (2d Cir. 2002), of the factual

14

findings and legal conclusions of the trial court. *See* 28 U.S.C. § 2254(d).[4] We need not determine here whether Messiah's claims were adjudicated on the merits by the state courts, thereby triggering AEDPA review, because his claims would fail even if we apply the less deferential, pre-AEDPA standard.[5] *See DeBerry*, 403 F.3d at 68. In other words, "the distinction between AEDPA and pre-AEDPA standards is not crucial" for our consideration of the particular *Batson* claims asserted here. *Id.* With respect to Messiah's claim of legal error—that the trial court failed to rule on the *Batson* challenge relating to panelist Woodbury—we would reach the same conclusion regardless of whether we apply a pre-AEDPA *de novo* standard of review, *see Cotto v. Herbert*, 331 F.3d 217, 230 (2d Cir. 2003), or the relevant AEDPA standard—namely, whether the purported failure to rule "was contrary to, or involved an unreasonable application of, clearly established Federal law, as

---

[4] As amended by AEDPA, subsection (d) of § 2254 reads in pertinent part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

[5] We do not question, much less qualify, the principle of *Ryan v. Miller*, 303 F.3d 231 (2d Cir. 2002), that we must employ AEDPA deference if we are to review a matter at all when we are unsure whether a state decision rests on an otherwise adequate and independent state ground or on an adjudication of the merits. *See id.* at 246 ("There is no reason . . . to doubt that AEDPA applies in this situation because the only alternative to finding the claim adjudicated on the merits would be finding the claim procedurally barred, in which case we would not have entertained the claim in the first instance (absent a showing of cause and prejudice)."). Because we have expressly avoided reaching whether the application of the rule of *Allen* in this case amounts to an otherwise adequate and independent state procedural ground, it remains possible that the decision of the state court here was based on a state ground that was not adequate and independent. Accordingly, we do not confront the binary circumstance presented in *Ryan*. Had we determined that *Allen* constitutes an otherwise adequate and independent state procedural ground, we would, of course, be bound by *Ryan*. As *Ryan* does not apply here, we need not address the apparent tension between *Ryan* and our recent decision in *DeBerry*—an opinion by the author of *Ryan* in which we intimated in dicta that when we were unsure whether a state court had decided a claim on the merits or on an otherwise adequate and independent state procedural ground, we would not necessarily apply AEDPA deference if we were to review the claim, *see DeBerry*, 403 F.3d at 67 & n.7—other than to note that *Ryan* remains the law of the Circuit absent any supervening decision by the Supreme Court or an en banc decision of our Court. *See, e.g.*, *United States v. Allah*, 130 F.3d 33, 38 (2d Cir. 1997).

determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). In regard to Messiah's claims that the trial court's *Batson* rulings were not supported by the record, we reach the same outcome under the pre-AEDPA standard of "great deference" to the trial court's assessment of credibility, *Hernandez v. New York*, 500 U.S. 352, 364 (1991), as we would if we applied AEDPA's even more deferential standard—namely, whether the trial court's determination "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). We need not therefore determine whether Messiah's claims were subject to a ruling on the merits in state court, as those claims fail under the more forgiving pre-AEDPA standards of review. *See DeBerry*, 403 F.3d at 68.

### B.      Panelist Woodbury

Messiah argues that the trial court failed to rule on his *Batson* challenge to the prosecutor's striking of panelist Woodbury and that, in the alternative, if the trial court did render such a ruling, it was not supported by the record.

We have held that a trial judge has a "duty at the third stage [of the *Batson* inquiry] to determine the credibility of the [non-moving party's] proffered [race-neutral] explanations" for peremptorily striking jurors. *Jordan v. Lefevre*, 206 F.3d 196, 200 (2d Cir. 2000). That duty requires that the trial judge "explicitly adjudicat[e] the credibility of the non-moving . . . party's race neutral explanations for . . . peremptorily striking potential jurors." *Id.* We have also recognized, however, that a judge need not engage in "a talismanic recitation of specific words in order to satisfy *Batson*." *Galarza v. Keane*, 252 F.3d 630, 640 n.10 (2d Cir. 2001). Instead, the trial judge must simply make clear whether he credits the non-moving party's race-neutral explanation for striking the relevant panelist. *See id.* at 636.

Ordinarily, the outcome determinative issue at step three of the *Batson* procedure is "'whether counsel's race-neutral explanation for a peremptory challenge should be believed.'" *McKinney*, 326 F.3d at 98 (quoting *Hernandez*, 500 U.S. at 365). Accordingly, unambiguous rejection of a *Batson* challenge will demonstrate with sufficient clarity that a trial court deems the movant to have failed to carry his burden to show that the prosecutor's proffered race-neutral explanation is pretextual. *See id.* at 99-100 (holding that the trial court's comment "I see no reason why the juror should not be seated" amounted to a *Batson* ruling because "[b]y saying that it saw no reason for the juror not to be seated, the court was saying that it found the defense's [proffered race-neutral] reason to be pretextual"). The trial court is not compelled to make intricate factual findings in connection with its ruling in order to comply with *Batson*. *See Miller-El v. Cockrell*, 537 U.S. 322, 347 (2003) (explaining that "a state court need not make detailed findings addressing all the evidence before it" to render a proper *Batson* ruling). As long as a trial judge affords the parties a reasonable opportunity to make their respective records, he may express his *Batson* ruling on the credibility of a proffered race-neutral explanation in the form of a clear rejection or acceptance of a *Batson* challenge. *See McKinney*, 326 F.3d at 100 ("Although reviewing courts might have preferred the trial court to provide express reasons for each credibility determination, no clearly established federal law required the trial court to do so.").

After the *Batson* challenge to the striking of Woodbury was lodged and the prosecutor proffered a race-neutral explanation, defense counsel commented that Woodbury was the "only black juror on the panel," Tr., Apr. 13, 1995, at 78, and the trial judge responded "You can stop that nonsense. That's not true. Stop that. That is not true. He and number thirteen." *Id.* The District Court determined that these comments constituted a *Batson* ruling, reasoning that "[t]he trial court dismissed Petitioner's claim of pretext when it directed defense counsel to 'stop that

17

nonsense.'" *Messiah v. Duncan*, No. 99 Civ. 12178, 2004 WL 1924791, at *4 (S.D.N.Y. Aug. 27, 2004). Messiah challenges the District Court's ruling, arguing that the trial judge's comments did not "adjudicat[e] the credibility of the non-moving . . . party's race neutral explanations for . . . peremptorily striking potential jurors." *Jordan*, 206 F.3d at 200. We agree with Messiah. From the context—especially the comment "[h]e and number thirteen," as well as the recurring disagreement over the number of minority panelists present at jury selection—it is clear that "stop that nonsense" was not actually intended to adjudicate the *Batson* claim, but rather, to respond to defense counsel's assertion that Woodbury was the only black member of the venire.

Despite the District Court's error, we nevertheless affirm its judgment because we locate a *Batson* adjudication later in the colloquy. After the "stop that nonsense" comment, the trial judge asked defense counsel, "Anything else you wish to add?" Tr., Apr. 13, 1995, at 78. Defense counsel then asked, "Our striking?" and the trial judge answered, "With reference to these [peremptory strikes]" and said, "That's five, five by the People." *Id.* In the first round of jury selection, which involved the panel that included Woodbury, the prosecutor had listed five jurors—numbers two (Woodbury), three, four, eight and ten—as his peremptory strikes. The trial judge listened to the arguments, asked defense counsel if he had anything more to contribute and then unequivocally stated on the record his acceptance of all five of the prosecutor's strikes, including that of Woodbury. It is evident that the trial judge did not discredit or find unpersuasive the prosecutor's race-neutral explanations for striking Woodbury. Clear acceptance of that strike following the *Batson*

18

challenge, the proffered race-neutral explanation, and the ensuing discussion was a succinct but adequate *Batson* ruling.[6]

Messiah has not argued that the trial judge prevented defense counsel from making a full record. *See Jordan*, 206 F.3d at 201 (trial judge's *Batson* ruling was inadequate because he had "resisted counsel's efforts to make arguments regarding the peremptory strikes so as to create a full record" and "granted counsel no time to identify the relevant facts and circumstances necessary to decide whether the race-neutral reasons were credible and nonpretextual"). Nor is this a situation in which the trial judge ruled on some challenged panelists without ruling on others, *see Galarza*, 252 F.3d at 639-40 (quoting trial court's statement that "'[s]ince I am satisfied that *at least three* of [five or six *Batson* challenges] have certain articulable [sic] reasons, I am not going to stop the trial'" (emphasis in original)); *United States v. Alvarado*, 923 F.2d 253, 256 (2d Cir. 1991) ("[T]he Magistrate made findings that the prosecution's explanations were race-neutral as to [two panelists], but made no findings as to [two other panelists]."), or in which the court expressly refused to rule, *see Barnes v. Anderson*, 202 F.3d 150, 157 (2d Cir. 1999) (quoting trial court's statement that "'I won't rule on credibility of attorneys right now myself, but I find both cases have sufficient reason'"). Rather, here, the trial judge ruled by clearly accepting the strike of Woodbury after listening to the relevant arguments.

_____

[6] Our concurring colleague, Judge Jacobs, urges that the trial judge's ruling should have been somehow validated by the addition of the word "'denied.'" Concurring Op. at [2]. As noted *ante*, a trial judge is not obligated to provide "a talismanic recitation of specific words in order to satisfy *Batson*." *Galarza*, 252 F.3d at 640 n.10.

In our view, Judge Jacobs does not accurately characterize the trial court's statement "[t]hat's five, five by the People," Tr., Apr. 13, 1995, at 78, when he describes it as a "running tally," Concurring Op. at [3], of the number of peremptory strikes that the prosecution was attempting to exercise. It is clear from the context that the trial judge was indicating—after taking into account his rejection of the *Batson* challenge and the acceptance of the peremptory strike—the *final* number of peremptory strikes that the prosecution had been *permitted to exercise* in that round of jury selection. In addition, Judge Jacobs argues that the trial judge's decision to count Woodbury among the five accepted peremptory strikes and to refuse to seat him as a juror "is equally consistent with (i) a *Batson* step-three determination on the merits *or* (ii) a failure to consider the *Batson* challenge." *Id.* [at 3]. We disagree, as it is plain from the record that the trial judge rendered a ruling after considering the *Batson* challenge.

Messiah contends that to the extent the trial court did rule on Woodbury, its rejection of the *Batson* challenge was not supported by the record. He claims that the prosecutor's explanations for the strike—that Woodbury was a social behavior counselor who was likely to show sympathy for the defendant and that his wife worked for a law firm—were patently pretextual in light of the fact that there were four white panelists who performed volunteer work, but who were not stricken. Messiah does not dispute, however, that Woodbury was a social service professional, unlike the white subjects of comparison. It is not implausible that the prosecutor would have believed that a full-time social service provider who had dedicated his professional life to helping others might have more sympathy for a defendant than panelists who were part-time volunteers in charitable endeavors.

The prosecutor also explained that he did not find believable Woodbury's claim that he and his wife never talked about the subject of her work in a law office. The prosecutor might reasonably have felt less inclined to trust Woodbury on the basis of that statement. In addition, the prosecutor might have thought that Woodbury was in fact likely to have discussed other legal matters with his wife that could influence his decision in Messiah's case.

These distinctions between Woodbury and the white panelists, in combination with the "great deference" we are required to pay the trial judge's credibility determination, *Hernandez*, 500 U.S. at 364, support the ruling on the *Batson* challenge to the striking of Woodbury. *See Rice v. Collins*, —U.S.—, 126 S. Ct. 969, 976 (Jan. 18, 2006) (even if "[r]easonable minds reviewing the record might disagree about the prosecutor's credibility," it is inappropriate on habeas review "to supersede the trial court's credibility determination").

20

**C.       Panelist Rodgers**

Messiah contends that the state trial court's denial of his *Batson* challenge to the striking of panelist John Rodgers is not supported by the record.  As an initial matter, the prosecutor asserted that he was not aware that Rodgers was a member of a minority group.  Moreover, the prosecutor claimed to have stricken Rodgers because of the latter's purported inattentiveness during voir dire—he was reported to be reading the newspaper—and because of his interest in boxing (Messiah was a professional boxer).  A prosecutor may reasonably have qualms about a panelist who fails to pay attention during voir dire.  Moreover, a prosecutor could reasonably believe that a boxing fan who watches "the contenders[,] HBO, Showtime," Tr., Apr. 19, 1995, at 181, would have a degree of (unwelcome or undue) sympathy for the plight of a professional boxer.

Messiah contends that the prosecutor's race-neutral explanations for striking Rodgers were "disingenuous" because the prosecutor failed to strike a white panelist, William Cade, who also had expressed an interest in boxing.  Appellant's Br. at 20.  However, there is no suggestion in the record that Cade had been inattentive during voir dire, and, in any event, Cade explained that his interest in boxing was limited to "[a]matuer boxing, olympic type, three rounds, bang, bang, bang, not professional." Tr., Apr. 13, 1995, at 56.  It would have been rational for the prosecutor to infer that a panelist who only followed amateur boxing was less likely to have undue sympathy for a professional boxer than a fan of professional boxing.  Indeed, the prosecutor exercised a peremptory challenge against a white panelist, Benedict Tocci, who stated that he was an avid fan of professional boxing.

Mindful of the "great deference" we owe to the trial court's credibility determination, *Hernandez*, 500 U.S. at 364, we conclude that the District Court did not err in finding that there had been no *Batson* violation in the exclusion of Rodgers.

**D.      Panelist Whitfield**

Messiah maintains that the state trial court's rejection of his *Batson* challenge to the striking of panelist Calvin Whitfield was not supported by the record. The prosecutor asserted that he had stricken Whitfield because the latter had been prosecuted ten years earlier by the Westchester County District Attorney's Office, and because he had four relatives in state prison serving sentences of at least five years. The prosecutor could reasonably have believed that a panelist who had been prosecuted—even if only for a comparatively minor offense—by the very authority prosecuting Messiah, and who had a number of relatives serving prison sentences, might be unduly sympathetic to the defendant and hostile to the prosecutor.

Messiah contends that the prosecutor's failure to strike white panelists Frances McCowen and Anthony DeLuca demonstrates that the proffered reasons for striking Whitfield were pretextual, because each of those white panelists had a son who had experienced problems with law enforcement. McCowen's son had been arrested, convicted and sentenced to probation for participating in a drug transaction. DeLuca's son had an undescribed "incident with police" relating to his towing business. Tr., Apr. 13, 1995, at 35. Neither McCowen nor DeLuca indicated any personal involvement with the criminal justice system, let alone with the Westchester County District Attorney's Office. Deluca explained that he did not have any adverse feelings towards the police as a result of the incident with his son's towing business. Moreover, neither DeLuca nor McCowen reported that he had any relative who was imprisoned.

In light of the substantial differences between the circumstances of Whitfield on the one hand and of DeLuca and McCowen on the other hand, as well as the "great deference" we afford the credibility determination of the trial court, *Hernandez*, 500 U.S. at 364, the rejection of Messiah's *Batson* challenge to the striking of panelist Whitfield is supported by the record.

22

## Conclusion

In sum, we hold that as long as each side to a *Batson* dispute is provided an opportunity to make its record, a clear expression of the trial court's acceptance or rejection of a peremptory strike is an adequate adjudication of the merits of the *Batson* claim; the failure to make particularized findings in such circumstances in no sense qualifies or undermines the trial court's *Batson* ruling. In the instant case, the trial court rendered an adequate ruling on Messiah's *Batson* challenge to the striking of panelist Woodbury, and its rulings on each of the three *Batson* challenges (including that relating to Woodbury) are supported by the record. Accordingly, the District Court properly dismissed Messiah's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The judgment is **AFFIRMED**.

23

DENNIS JACOBS, *Circuit Judge*, concurring:

I concur in the dismissal of Messiah's petition, but I do so on a different ground. The majority upholds the district court's denial of Messiah's *Batson* motion challenging the strike of Mr. Woodbury on the ground that the trial judge rendered "a succinct but adequate *Batson* ruling." I respectfully disagree. In my view, the "succinct" words cited by the majority cannot satisfy the procedural requirement that our cases impose on trial judges to make explicit step-three *Batson* rulings. The phrases relied on by the majority—"With reference to these. That's five, five by the people"—merely announce the current total of the prosecution's peremptory challenges without a word as to the *Batson* motion itself. Jury Selection Tr., 78, Apr. 13, 1995; *see ante*, at [18]. There is, however, another available (and sufficient) ground for affirmance. I would dismiss Messiah's *Batson* motion challenging the Woodbury strike on the ground that Messiah's defense counsel failed to object to the prosecutor's non-discriminatory rationale, and thereby failed even to precipitate a step-three *Batson* adjudication under New York law.

**I**

The majority recites that the trial judge "unequivocally stated on the record his acceptance of all five of the prosecutor's strikes, including that of Woodbury" after "listen[ing] to the arguments [and] ask[ing] defense counsel if he had anything more to contribute," and concludes that this constitutes an adequate step-three *Batson* ruling because it is "evident that the trial judge did not discredit or find unpersuasive the prosecutor's race-neutral explanations for striking Woodbury." *Ante*, at [18]. This approach is defective as an application of our standard for step-three *Batson* rulings, and as a matter of fact.

1

As to the standard, the trial judge must "*explicitly* adjudicat[e] the credibility of the non-moving . . . party's race neutral explanations for . . . peremptorily striking potential jurors." *Jordan v. Lefevre*, 206 F.3d 196, 200 (2d Cir. 2000) (emphasis added); *see Barnes v. Anderson*, 202 F.3d 150, 156 (2d Cir. 1999) (holding that "denial of a *Batson* motion without *explicit adjudication* of the credibility of the non-movant's race-neutral explanations for the challenged strikes" constitutes error) (emphasis added); *see also Galarza v. Keane*, 252 F.3d 630, 636 (2d Cir. 2001) ("We have repeatedly emphasized that a trial court may not deny a *Batson* motion without determining whether it credits the race-neutral explanations for the challenged peremptory strikes."). Explicitness is required to support the "great deference" we accord "the trial judge's determination of discriminatory intent and credibility," *Jordan v. Lefevre*, 206 F.3d at 200, and to protect the Equal Protection right itself, *see id.* (citing *Batson v. Kentucky*, 476 U.S. 79, 98 (1986), for proposition that "the trial court has a 'duty to determine if the defendant has established purposeful discrimination,'" and *Hernandez v. New York*, 500 U.S. 352, 365 (1991), for proposition that the "duty of assessing the credibility of the prosecutor's race neutral reasons [embodies] the 'decisive question' in the *Batson* analysis").

I agree with the majority that explicitness requires no more than that the trial judge "make clear whether he credits the non-moving party's race-neutral explanation for striking the relevant panelist," for example through "unambiguous rejection of a *Batson* challenge," *ante*, at [16], and that no "talismanic recitation of specific words" is needed. *Galarza*, 252 F.3d at 640 n.10. Thus, when the trial judge stated that the defense counsel's motion for a mistrial with respect to the striking of another juror was "denied," that satisfied the explicitness requirement because it was a clear, individualized rejection of the *Batson* motion.

The language cited by the majority as constituting a ruling on the *Batson* motion challenging the Woodbury strike is not individualized—Messiah's counsel made a *Batson* motion with respect to

2

only one of the five jurors referenced by the judge—and has nothing evidently to do with the *Batson* motion itself. It was a running tally; indeed, a few moments later, the judge scored the number of peremptory strikes on the other side as "[f]our by defendant," a tally unrelated to *Batson* (the prosecutor having made no *Batson* motion). Jury Selection Tr., 78. Score-keeping in the course of moving along with the voir dire is not the definitive adjudication of a motion asserting a federal constitutional right.

The majority relies on *McKinney v. Artuz*, in which the trial court's statement—"I see no reason why the juror should not be seated"—was held sufficiently explicit. 326 F.3d 87, 99 (2d Cir. 2003). *McKinney* is not analogous. In that case, the judge *granted* the *Batson* motion (seating the juror notwithstanding the peremptory challenge); since the default outcome of a peremptory strike is that the juror is excused rather than seated, there was no question that the trial judge had conducted and completed the required step-three *Batson* analysis. By contrast, when a trial judge acknowledges that a struck juror is gone, that observation is equally consistent with (i) a *Batson* step-three determination on the merits *or* (ii) a failure to consider the *Batson* motion.

## II

I concur in the result nevertheless because Messiah's defense counsel failed to object to the prosecutor's non-discriminatory rationale, and thereby—per *People v. Allen*, 86 N.Y.2d 101, 111 (1995)—failed to precipitate a step-three *Batson* adjudication. No explicit ruling on *Batson* was made by the judge because no *Batson* motion was made.

In *Batson*, the Supreme Court expressly left it to the states to establish procedures for adjudicating *Batson* claims so long as those procedures do not conflict with the core federal right. *See Batson v. Kentucky*, 476 U.S. 79, 90 (1986). New York's *Allen* rule is not inconsistent with the right

3

established by *Batson* and its progeny; this Court has adopted a similar rule for *Batson* motions made in federal trials. *See United States v. Rudas*, 905 F.2d 38, 41 (2d Cir. 1990) ("Once the Government has offered reasons for its peremptory challenges, defense counsel must expressly indicate an intention to pursue the *Batson* claim.").

Here, the New York Appellate Division cited to *Allen*; and (as a review of the record shows) defense counsel failed to meet the *Allen* requirements. This should be enough to affirm dismissal of a petition that cannot be granted unless the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

As the majority observes, the Appellate Division did not make clear that its invocation of *Allen* amounted to an independent procedural ground for rejecting Messiah's appeal; as a consequence, this petition cannot be dismissed under the rule that bars federal *habeas* review of claims defaulted in state court pursuant to an independent and adequate state procedural ground. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996); *ante*, at [12-13]. That does not, however, foreclose our consideration of *Allen* in deciding the merits of Messiah's *habeas* petition—that is, whether the state court offended a settled rule of federal constitutional law. Such consideration is particularly important because an *Allen* waiver stops the *Batson* inquiry in its tracks, and prevents the development of a record useful for review of a *Batson* ruling on the merits. Indeed, the assessment on the merits is frustrated altogether unless defense counsel complies with *Allen* and presses the objection in a way that compels the court to decide the motion. Since Messiah waived his *Batson* motion, it is no wonder the trial judge glided past it without ruling on the merits, then announced the state of play, and moved on.

4

My approach requires me to distinguish *Deberry v. Portuondo*, 403 F.3d 57 (2d Cir. 2005), which holds that this Circuit's adoption of an *Allen*-like rule as a matter of *federal* law, *see United States v. Rudas*, 905 F.2d at 41, does not compel a finding on federal *habeas* review that a *Batson* movant waives his claims if he does not object in state court to the non-moving party's non-discriminatory rationale. *See DeBerry*, 403 F.3d at 66. That case does not speak to the issue in the present appeal: the effect of a *state* (not federal) procedural rule.