UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2024

(Argued:  January 27, 2025     Decided:  August 13, 2025)

Docket No. 23-7934

—————————————————

TERRANCE CAREW,
Petitioner–Appellant,

v.

ROBERT MORTON,
Respondent–Appellee.

—————————————————

Before:     SACK, LYNCH, AND LOHIER, *Circuit Judges.*

Petitioner-Appellant Terrance Carew, who is currently serving a fourteen-year sentence for attempted murder in the second degree and other offenses, filed a habeas petition in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 2254, seeking release from state custody. During jury selection for his trial in New York state court, Carew's trial counsel objected that the prosecution's use of its peremptory challenges was racially discriminatory in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). While the trial court appeared to agree that two of the peremptory challenges violated *Batson*, it was unable to retrieve the earlier-struck jurors because of an administrative error by the court. Carew's trial counsel did not object to the court's failure to impose a *Batson* remedy, and Carew was subsequently convicted on counts of attempted second-degree murder, attempted first-degree robbery, and second-degree criminal possession of a weapon. He was acquitted on two counts of attempted first-degree murder.

The district court (Hector Gonzalez, *Judge*) denied Carew's habeas petition, first concluding that Carew had "procedurally defaulted" on his Batson claim by

failing to object to the lack of a *Batson* remedy before the trial court. *See Carew v. Morton*, No. 20-CV-02480, 2023 WL 8258690 (E.D.N.Y. Nov. 29, 2023). Carew attempted to overcome that procedural default by demonstrating ineffective assistance of counsel based on his trial counsel's failure to seek a *Batson* remedy. However, the district court concluded that Carew's counsel did not render constitutionally ineffective assistance of counsel.

On appeal, we conclude that Carew has failed to demonstrate ineffective assistance of counsel because he has not met his burden of showing that his trial counsel lacked strategic reasons for declining to seek a *Batson* remedy. We further decline to impose upon defense counsel a duty to seek *Batson* remedies at the expense of the strategic interests of their clients.

We therefore AFFIRM the district court's judgment.

Judge Lohier concurs in a separate opinion.

TAMMY E. LINN (Patricia Pazner, *on the brief*), Appellate Advocates, New York, NY, *for Petitioner-Appellant Terrance Carew;*

NANCY FITZPATRICK TALCOTT (John M. Castellano, *on the brief*), Assistant District Attorneys, *for* Melinda Katz, District Attorney for Queens County, Kew Gardens, NY, *for Respondent-Appellee Robert Morton.*

SACK, *Circuit Judge*:

During jury selection for Petitioner-Appellant Terrance Carew's criminal trial in New York state court for attempted first-degree murder and related offenses, Carew's trial counsel lodged an objection that the prosecution's use of its peremptory challenges against several Black prospective jurors was racially

discriminatory in violation of the Fourteenth Amendment of the United States Constitution under *Batson v. Kentucky*, 476 U.S. 79 (1986). Although the trial court appeared to grant two of Carew's *Batson* challenges, the court had erroneously already dismissed the two improperly stricken jurors, who were therefore unable to serve on the jury. Carew's counsel declined to seek an alternative *Batson* remedy, and the case proceeded to trial. The jury ultimately found Carew guilty of attempted murder in the second degree, attempted robbery in the first degree, and criminal possession of a weapon in the second degree, but not guilty of the more serious counts of attempted first-degree murder.

Carew appealed his conviction to the New York state appellate court, which concluded that although the trial court had found that a *Batson* violation had occurred, it could not review whether the trial court erred in failing to impose a remedy because Carew's trial counsel had not contemporaneously objected before the trial court. *People v. Carew*, 88 N.Y.S.3d 895, 896 (2d Dep't 2018). The court also rejected Carew's argument that he was denied constitutionally effective assistance of counsel on its merits. *Id.* Judge Fahey of

the New York Court of Appeals subsequently denied Carew leave to appeal. *See People v. Carew*, 33 N.Y.3d 946 (2019).

Having exhausted his state remedies, Carew filed a federal habeas petition pursuant to 28 U.S.C. § 2254 in the United States District Court for the Eastern District of New York against Respondent-Appellee Robert Morton, Superintendent of the Downstate Correctional Facility. The district court (Hector Gonzalez, *Judge*) denied Carew's habeas petition. *See Carew v. Morton*, No. 20-CV-02480, 2023 WL 8258690 (E.D.N.Y. Nov. 29, 2023). The court first observed that Carew needed to demonstrate ineffective assistance of counsel to overcome trial counsel's failure to object to the lack of a *Batson* remedy in state trial court (called a "procedural default," in habeas jargon) and reach the *Batson* claim on the merits. *Id.* at *4. The court concluded, however, that Carew had not shown ineffective assistance of counsel and denied the habeas petition. *Id.* at *5–8.

We conclude that the district court properly denied Carew's habeas petition because Carew has not demonstrated that his trial counsel did not act strategically in forgoing a *Batson* remedy and proceeding with the jury as selected. We further decline to require defense counsel to seek a *Batson* remedy

even when doing so might be disadvantageous to the defendant. We therefore **AFFIRM** the district court's order denying Carew's petition for habeas relief.

## BACKGROUND

### I. Offense Conduct

Carew attempted to rob a man at a Queens housing development; when the intended victim resisted, Carew fired a gun at him. After police arrived on the scene and ordered Carew to drop his weapon, he fired several shots at the officers. Three officers fired gunshots at Carew, one of which struck him in the leg. Carew was subsequently indicted by a grand jury in Queens County on two counts of attempted first-degree murder for shooting at two police officers, one count of attempted second-degree murder for shooting at the victim, one count of attempted first-degree robbery, and one count of second-degree criminal possession of a weapon.

### II. State-Court Trial Proceedings

The case proceeded to trial before the Honorable Joel Blumenfeld, Justice of the New York Supreme Court for Queens County. On October 1, 2015, the court held jury selection; Herbert Kellner represented Carew. Two rounds of jury selection were needed to choose twelve jurors and four alternates.

In the first round, the prosecution used four peremptory challenges to strike prospective jurors, and the defense used none. Of the four peremptory challenges, the prosecution used two against prospective jurors, who, like Carew, are Black men. The first prospective juror, "G.C.,"[1] stated during voir dire that he served as a school safety officer, which he described as being part of "law enforcement," and that he had made arrests before. App'x at 38–39. The second, "K.J.," worked in medical billing and had a brother who was convicted of weapons possession; he stated that he had no bad feelings toward police, the prosecutor, or the court involved in his brother's case, and that he could be fair and impartial in rendering a verdict despite his brother's conviction. Kellner did not raise a *Batson* challenge to the prosecution's use of its peremptory challenges at this juncture, and the court dismissed the struck jurors.

Having selected twelve jurors for the petit jury, the court proceeded to select four alternates. The prosecution used a peremptory challenge against another Black male prospective juror, "C.C.," who stated during voir dire that that he did "community work" for a living and knew people in law enforcement

---

[1] Out of respect for the prospective jurors' privacy, we refer to them using only their initials.

from his time serving in the Army. *Id.* at 217, 267. Here, however, Kellner

launched a *Batson* challenge, asking for a "race neutral reason with respect to [the

struck prospective juror]." *Id.* at 280. Kellner noted C.C. was "the third African

American that has been excluded." *Id.* The court inquired whether Kellner was

asking solely about the last-struck juror, C.C., or about all three, to which Kellner

responded: "I would — there were 3. It's a pattern here. . . . This is now the third

African American person that has been taken off and challenged by the

prosecutor." *Id.* at 280–81.

Employing the framework for determining whether a *Batson* violation has

occurred,[2] the court asked the prosecution for race-neutral reasons for striking

---

[2] "First, a trial court must decide whether the party challenging the strike has made a *prima facie* showing that the circumstances give rise to an inference that a member of the *venire* was struck because of his or her race. Such a *prima facie* case may be established, for example, by showing a pattern of strikes against minority prospective jurors." *Galarza v. Keane*, 252 F.3d 630, 636 (2d Cir. 2001). Second, "[o]nce the defendant makes a prima facie showing [of purposeful discrimination], the burden shifts to the State to come forward with a neutral explanation for challenging [the stricken] jurors." *Batson*, 476 U.S. at 97. This step "does not require the party to give an explanation that is persuasive or even plausible." *Galarza*, 252 F.3d at 636. Third, if the government proffers a race-neutral explanation, "[t]he trial court then will have the duty to determine if the defendant has established purposeful discrimination." *Batson*, 476 U.S. at 98. Here, "the persuasiveness of the race-neutral explanation is relevant." *Galarza*, 252 F.3d at 636. Throughout, "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett v. Elem*, 514 U.S. 765, 768 (1995).

the three prospective jurors and also heard from Kellner. The court credited the prosecution's explanation for striking C.C.—that his "many dealings with [] community outreach" and his employment as a "community leader" might make him "biased" with respect to the case—as "realistic." *Id.* at 284–85. The court did not comment on the prosecution's explanation for striking K.J. *Id.* at 283–84. However, the court found the prosecution's race-neutral explanation for striking G.C., the school safety officer, "problematic." *Id.* at 283.

The court asked Kellner if he wanted G.C. seated as an alternate; Kellner replied that he did. However, the court clerk stated that she had already sent the earlier-struck jurors away, which she acknowledged as a mistake and "[her] fault." *Id.* at 285. The court then asked Kellner if he wanted K.J. seated; once more, Kellner replied that he did. Again, however, the court clerk said that the prospective juror was "gone." *Id.* The court told the parties that the clerk "just messed up" and stated: "I doubt that we will be able to get them back. Well, let's move on." *Id.* at 286. Kellner did not lodge any objection to proceeding without a *Batson* remedy.

Jury selection concluded with four alternates being chosen. The first alternate juror—whose position was the subject of the earlier *Batson* dispute— eventually served on the twelve-person jury after a juror was excused.

On December 7, 2015, the jury found Carew not guilty of attempted first-degree murder but convicted him of attempted murder in the second degree, attempted robbery in the first degree, and criminal possession of a weapon in the second degree. The court subsequently sentenced Carew to concurrent fourteen-year terms of incarceration and five years of post-release supervision.

## III. Direct Review

Proceeding with new counsel, Carew directly appealed his conviction to the Appellate Division of the New York Supreme Court, arguing, inter alia, that his conviction violated *Batson* and that he was denied effective assistance of counsel. The Appellate Division affirmed the trial court's judgment. *See Carew*, 88 N.Y.S.3d at 895–96.

The Appellate Division first addressed Carew's *Batson* argument. Summarizing the trial-court proceedings, the court determined that the trial court "granted the defendant's challenge, made pursuant to *Batson*[], to the prosecutor's use of peremptory challenges for two potential jurors in the first

9

round of jury selection." *Id.* at 896 (internal citation omitted). However, the court concluded that because "defense counsel did not request any alternative remedy when it became apparent that the two potential jurors at issue had been excused, and did not object when jury selection continued thereafter, the defendant's contention that the court erred in failing to impose any alternative remedy is unpreserved for appellate review." *Id.* The court determined that the alleged error was "not so fundamental as to constitute a mode of proceedings error exempting him from the rules of preservation" and "decline[d] to review the defendant's contention in the exercise of [its] interest of justice jurisdiction." *Id.*

The court next rejected Carew's contention that he was denied effective assistance of counsel, stating that its review of the entire record "establishes that defense counsel provided meaningful representation" and Carew had "failed to demonstrate the absence of strategic or other legitimate explanations for counsel's alleged shortcomings." *Id.* (quotation marks omitted). The court concluded that Carew's other challenges were without merit. *Id.*

Carew subsequently sought leave to appeal to the New York Court of Appeals, but the court denied leave. *See Carew*, 33 N.Y.3d 946.

10

## IV. Federal Habeas Petition

Having exhausted his state remedies, Carew timely filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Eastern District of New York. The district court denied the petition. *See Carew*, 2023 WL 8258690, at *1. The court concluded that, because Carew had "procedurally defaulted" on his *Batson* claim by failing to object to the lack of a *Batson* remedy before the trial court, he would need to show ineffective assistance of his trial counsel to establish cause and prejudice to overcome that procedural default. *Id.* at *3–4. However, the court concluded that Carew had failed to demonstrate deficient performance of counsel and therefore denied his habeas petition. *Id.* at *5–8. The district court granted a certificate of appealability. *Id.* at *8. Carew's timely appeal followed.

## DISCUSSION

On appeal, Carew argues that the district court erred in denying his habeas petition. We "review [a] district court's decision to grant or deny habeas relief *de novo*." *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009). We begin by discussing the habeas framework and *Batson* before turning to the merits of Carew's appeal.

## I.  Federal Habeas Relief Under 28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 authorizes federal courts to provide habeas corpus relief to prisoners in state custody "only on the ground that [the prisoner] is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2254(a).  After a petitioner has "exhausted the remedies available in the courts of the State"—as they generally must pursuant to AEDPA's exhaustion requirement, § 2254(b)(1)(A)—federal courts apply a deferential standard of review commonly referred to as "AEDPA deference."  Under AEDPA deference, a habeas writ shall not issue with "respect to any claim that was adjudicated on the merits in State court proceedings" unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *Id.* § 2254(d)(1)–(2).

Because of federal-state comity—i.e., affording states "an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights," *Shinn v. Ramirez*, 596 U.S. 366, 378 (2022) (quotation marks omitted)—and

respect for the traditional responsibility of the states to enforce their own criminal laws, the Supreme Court has "narrowly circumscribed" the "availability of habeas relief" with several significant procedural rules, including "procedural default," *id.* at 375. Unlike the statutory exhaustion requirement, procedural default is a judicially created, equitable doctrine "elaborated in the exercise of the Court's discretion." *Martinez v. Ryan*, 566 U.S. 1, 13 (2012); *see also Brown v. Davenport*, 596 U.S. 118, 132–33 (2022) (describing the Court's exercise of its equitable discretion). Under that doctrine, "federal courts generally decline to hear any federal claim that was not presented to the state courts consistent with the State's own procedural rules." *Shinn*, 596 U.S. at 378 (alteration adopted) (quotation marks omitted). To determine whether a claim has been procedurally defaulted, federal courts employ a two-part test, asking whether "(1) a state court [has] declined to address [a prisoner's federal] claims because the prisoner had failed to meet a state procedural requirement," and "(2) the state judgment rests on independent and adequate state procedural grounds." *Maples v. Thomas*, 565 U.S. 266, 280 (2012) (quotation marks omitted).

Here, the Appellate Division declined to consider Carew's *Batson* claim on its merits because, at trial, Carew's counsel failed to object contemporaneously to

13

the court's failure to impose a *Batson* remedy. *See Carew*, 88 N.Y.S.3d at 895–96.

New York's contemporaneous-objection rule serves as "a firmly established and

regularly followed New York procedural rule" that provides independent and

adequate grounds for barring federal habeas relief. *Downs v. Lape*, 657 F.3d 97,

104 (2d Cir. 2011). It is undisputed that Carew has procedurally defaulted on his

*Batson* claim.[3]

A habeas petitioner may overcome procedural default by establishing

"cause and prejudice": "cause for the default and actual prejudice as a result of

the alleged violation of federal law." *Coleman v. Thompson*, 501 U.S. 722, 750

(1991). The Supreme Court has recognized that constitutionally ineffective

assistance of counsel, as defined by *Strickland v. Washington*, 466 U.S. 668 (1984),

can establish sufficient cause to overcome a procedural default. *See Murray v.

Carrier*, 477 U.S. 478, 488 (1986) ("Ineffective assistance of counsel, then, is cause

for a procedural default."); *see also Edwards v. Carpenter*, 529 U.S. 446, 451 (2000)

("[W]e have acknowledged that in certain circumstances counsel's

ineffectiveness in failing properly to preserve the claim for review in state court

---

[3] Through his direct appeal in state court, Carew has successfully exhausted his state remedies.

will suffice [to establish cause to overcome a procedural default].").  *Strickland*, in turn, outlines a two-part test for determining whether a criminal defendant was deprived of constitutionally effective assistance of counsel, requiring the defendant to demonstrate (1) deficient performance of his counsel and (2) prejudice.  *Strickland*, 466 U.S. at 687.  We discuss the *Strickland* standard further below.

Even if a habeas petitioner establishes ineffective assistance of counsel as cause and prejudice sufficient to excuse his procedural default,[4] the petitioner's task is not done—he must also demonstrate the merits of his underlying federal claim.  *See Tavarez v. Larkin*, 814 F.3d 644, 650 (2d Cir. 2016) (assuming without deciding that the petitioner could establish ineffective assistance of counsel as cause to excuse procedural default but rejecting the underlying federal constitutional claims on the merits).  Thus, to succeed on his habeas petition,

---

[4] While we ultimately do not reach the issue of prejudice, we assume for the purposes of this appeal that a showing of "prejudice" under *Strickland* suffices to show "prejudice" under the cause-and-prejudice standard needed to excuse procedural default.  *See, e.g., Lynch v. Ficco*, 438 F.3d 35, 49 (1st Cir. 2006) ("[I]f a habeas petitioner can meet the prejudice standard needed to establish ineffective assistance under *Strickland*, then the prejudice standard under the 'cause and prejudice' showing to excuse a procedural default is also met.").

Carew must prevail on *two* constitutional claims:[5] (1) his ineffective assistance of counsel claim, *see Aparicio v. Artuz*, 269 F.3d 78, 99 n.10 (2d Cir. 2001) (stating that ineffective assistance of counsel "can establish cause for a procedural default only if it is itself a valid constitutional claim"), and (2) his underlying *Batson* claim, *see Tavarez*, 814 F.3d at 650.

## II. *Batson*

In *Batson*, the Supreme Court held that the Fourteenth Amendment's Equal Protection Clause prohibits prosecutors from exercising peremptory challenges against prospective jurors in a racially discriminatory manner. 476 U.S. at 89. The Court explained that the "central concern" of the Fourteenth Amendment "was to put an end to governmental discrimination on account of race," and that

---

[5] Carew confirmed at oral argument that his ineffective assistance of counsel claim is intended to show cause and prejudice to reach the procedurally defaulted *Batson* claim. *See* Oral Argument Recording at 2:28–:35. It would also be possible to allege ineffective assistance of counsel related to a *Batson* violation as an independent claim for habeas relief, rather than only as a vehicle for overcoming procedural default on the underlying *Batson* claim. *Cf. Drain v. Woods*, 595 F. App'x 558, 567 (6th Cir. 2014) (unpublished opinion) (declining to evaluate *sua sponte* ineffective assistance of counsel as a means to overcome a waived or forfeited procedural default defense and instead treating the *Batson* claim and the ineffective assistance claim related to a *Batson* violation as two distinct claims). However, as we discuss further below, it is an open question in this Circuit whether a federal habeas court should apply different standards of review to the state court's rejection of an ineffective assistance of counsel claim on direct appeal depending on whether that claim is raised as cause and prejudice to excuse procedural default or as an independent, freestanding claim for relief.

the "[e]xclusion of [B]lack citizens from service as jurors constitutes a primary example of the evil the Fourteenth Amendment was designed to cure." *Id.* at 85. Racial discrimination in jury selection, it elaborated, "harms not only the accused whose life or liberty they are summoned to try . . . [but also] the excluded juror." *Id.* at 87. The Supreme Court has subsequently extended *Batson* to civil trials, *see Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 616 (1991), defense counsel's use of peremptory challenges, *see Georgia v. McCollum*, 505 U.S. 42, 59 (1992), and peremptory challenges based on sex, *see J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 130–31 (1994); a defendant also has standing to object to the prosecution striking jurors even when the defendant and excluded jurors do not share the same race, *see Powers v. Ohio*, 499 U.S. 400, 415 (1991).

Significantly, although *Batson* recognized that racially discriminatory peremptory challenges violate the Fourteenth Amendment, it did not define the precise contours of an appropriate remedy for such a violation. In a footnote, the Court stated that it "express[ed] no view on whether it is more appropriate in a particular case, upon a finding of discrimination against [B]lack jurors, for the trial court to discharge the venire and select a new jury from a panel not previously associated with the case, or to disallow the discriminatory challenges

and resume selection with the improperly challenged jurors reinstated on the venire." *Batson*, 476 U.S. at 99 n. 24 (internal citation omitted). We have subsequently explained that pursuant to the district court's broad discretion to fashion appropriate Batson remedies, *Batson* errors are "remediable in any one of a number of ways." *McCrory v. Henderson*, 82 F.3d 1243, 1247 (2d Cir. 1996). For example, abusive peremptory challenges might be disallowed, "additional jurors might be called to the venire and additional challenges granted to the defendant" if the challenged jurors have already been released, or "jury selection might begin anew with a fresh panel." *Id.*

Because "the effects of racial discrimination during voir dire may persist through the whole course of the trial proceedings," we have held that *Batson* errors are "structural," meaning they are "not subject to harmless error review." *Tankleff v. Senkowski*, 135 F.3d 235, 248 (2d Cir. 1998) (quotation marks omitted). Consequently, when a *Batson* error is preserved before the trial court and raised on direct appeal, the error requires automatic reversal of conviction. *See id.*; *see also Weaver v. Massachusetts*, 582 U.S. 286, 301 (2017). Similarly, on a federal habeas petition seeking relief from state custody pursuant to 28 U.S.C. § 2254, where, unlike here, a *Batson* claim is sufficiently preserved for collateral review,

that claim—if meritorious—requires habeas relief. *See Tankleff*, 135 F.3d at 248–50

(on habeas petition, holding that a *Batson* claim defies harmless error analysis

and directing that the district court, if it cannot determine whether a *Batson*

violation had occurred, is required to grant the petitioner a new trial); *see also*

*Jordan v. Lefevre*, 206 F.3d 196, 201–03 (2d Cir. 2000) (holding that the state trial

court's failure to make a *Batson* determination requires the state to grant

petitioner a new trial if the district court cannot determine whether a *Batson* error

occurred). Relevant to the appeal before us, it is an open question in this Circuit

whether a *Batson* error is the type of structural error that automatically entitles

the habeas petitioner to relief when the structural error is unpreserved for

collateral review but raised in a claim alleging ineffective assistance of counsel.[6]

*Weaver*, 582 U.S. at 301–03.

---

[6] *Weaver*—which held that prejudice for the purposes of an ineffective assistance of counsel claim was not presumed where counsel failed to object to the structural error of the closure of the courtroom during jury selection—was raised on direct appeal from a state high court, but it did not address whether structural errors such as *Batson* violations require automatic relief when "raised instead in an ineffective-assistance claim on collateral review." 582 U.S. at 294, 301–02.

### III.    Analysis

We begin with Carew's claim of ineffective assistance of counsel, which he attempts to use to overcome the procedural default on his *Batson* claim.  We assume that an unremedied *Batson* violation did occur.[7]

### A.    **Strickland***'s Deficient Performance of Counsel Prong*

Although we review the district court's decision to deny habeas relief de novo, *Dolphy*, 552 F.3d at 238, it remains an open question whether we apply de novo review or AEDPA deference to the Appellate Division's rejection of

---

[7] Although the trial court transcript is arguably unclear as to whether the court actually determined that there was a *Batson* violation, we may infer the court's finding from the transcript, even in the absence of a clear *Batson* ruling.  *See Messiah v. Duncan*, 435 F.3d 186, 199 (2d Cir. 2006).  We note, too, that the Appellate Division concluded that the trial court "granted the defendant's challenge, made pursuant to *Batson*[], to the prosecutor's use of peremptory challenges for two potential jurors," *Carew*, 88 N.Y.S.3d at 895–96 (internal citation omitted), a conclusion that is entitled to deference under AEPDA, s*ee Tavarez*, 814 F.3d at 650 (applying AEDPA deference to state-court decision on the merits of federal constitutional claims that were procedurally barred).  If, as Morton suggests, the trial court had *denied* the *Batson* motion without determining whether it credited the prosecution's race-neutral explanations for the challenged peremptory strikes, the trial court would have erred under *Batson*.  *See Messiah*, 435 F.3d at 198 ("[T]he trial judge must simply make clear whether he credits the non-moving party's race-neutral explanation for striking the relevant panelist."); *Galarza*, 252 F.3d at 636 ("We have repeatedly emphasized that a trial court may not deny a *Batson* motion without determining whether it credits the race-neutral explanations for the challenged peremptory strikes." (collecting cases)); *Jordan*, 206 F.3d at 202 (applying this requirement in the habeas context).

Carew's ineffective assistance of counsel claim,[8] *see, e.g.*, *Tavarez*, 814 F.3d at 650

(noting, but not deciding, the open question because the petitioner's

procedurally defaulted claims would in any event fail on the merits). This is also

a question that has divided our sister circuits.[9] Because we ultimately conclude

that Carew's ineffective assistance of counsel claim fails even under de novo

---

[8] The open question is "whether *de novo* review or AEDPA deference applies when a habeas petitioner advances a claim of ineffective assistance as cause to excuse procedural default (rather than as independent grounds for habeas relief)." *Tavarez*, 814 F.3d at 650. Because of the exhaustion doctrine, habeas petitioners are generally required to present a claim of ineffective assistance to the state courts as "an independent claim before it may be used to establish cause for a procedural default." *Murray*, 477 U.S. at 489. Ordinarily, federal habeas courts must afford AEDPA deference to a state court's adjudication of "any claim . . . on the merits." 28 U.S.C. § 2254(d). However, it is unclear whether the state court's adjudication of the *independent* ineffective assistance of counsel claim on the merits is entitled to AEDPA deference even when that claim is advanced only to show *cause and prejudice* on federal habeas review. If not, the pre-AEDPA, de novo standard established in *Coleman*, 501 U.S. at 755, would apply.

[9] *Compare Visciotti v. Martel*, 862 F.3d 749, 769 (9th Cir. 2016) (applying de novo review), *Joseph v. Coyle*, 469 F.3d 441, 459 (6th Cir. 2006) (same), *and Fischetti v. Johnson*, 384 F.3d 140, 154–55 (3d Cir. 2004) (same) *with Richardson v. Lemke*, 745 F.3d 258, 273 (7th Cir. 2014) (applying AEDPA deference), *and Roberson v. Rudek*, 446 F. App'x 107, 109–10 (10th Cir. 2011) (unpublished order) (affirming district court's application of AEDPA deference). Two of our sister circuits have yet to determine the appropriate standard of review. *See Sealey v. Warden, Ga. Diagnostic Prison*, 954 F.3d 1338, 1365 n.16 (11th Cir. 2020) ("We needn't address the conflict here because even under *de novo* review, Sealey's ineffective-assistance-of-appellate-counsel claim fails."); *Janosky v. St. Amand*, 594 F.3d 39, 44–45 (1st Cir. 2010).

review, we again need not resolve this question and instead assume without deciding that de novo review applies.

We begin with the first of the two prongs of *Strickland*, deficient performance of counsel. "To establish deficient performance, [the petitioner] must show that counsel's representation fell below an objective standard of reasonableness." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quotation marks omitted). At its core, this inquiry is "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id.* at 105 (quotation marks omitted). The Supreme Court has instructed that this prong "sets a high bar" to relief for a petitioner because it is "only when the lawyer's errors were so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment that *Strickland*'s first prong is satisfied." *Buck v. Davis*, 580 U.S. 100, 118–19 (2017) (alteration adopted) (quotation marks omitted).

"Even under *de novo* review," we nonetheless apply a "most deferential" standard for "judging counsel's representation," *Harrington*, 562 U.S. at 105, because of our "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, which

22

extends to counsel's strategic decisions, *Dunn v. Reeves*, 594 U.S. 731, 739 (2021).

"The burden of rebutting this presumption [of the reasonableness of counsel's decisions] rests squarely on the [petitioner]," who cannot rest on "the absence of evidence" to sustain it. *Id.* (quotation marks omitted). "[E]ven if there is reason to think that counsel's conduct was far from exemplary, a court still may not grant relief if the record does not reveal that counsel took an approach that no competent lawyer would have chosen. *Id.* (alterations adopted) (quotation marks omitted). Unreasonable errors by counsel include "omissions that cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness." *Wilson v. Mazzuca*, 570 F.3d 490, 502 (2d Cir. 2009) (alteration adopted) (quotation marks omitted).

We turn to whether Kellner's decision to forgo a *Batson* remedy deprived Carew of constitutionally effective representation.[10] On appeal, Carew argues

---

[10] The Appellate Division stated that its "review of the record in its totality establishes that defense counsel provided meaningful representation." *Carew*, 88 N.Y.S.3d at 896. While we have said that New York's totality-of-the-circumstances-based "meaningful representation" standard, properly applied, "is not contrary to *Strickland*,'" *Rosario v. Ercole*, 601 F.3d 118, 126 (2d Cir. 2010), we assume that the appropriate inquiry for deficient performance here is limited to Kellner's single decision to forgo a *Batson* remedy, rather than the entirety of his representation. *See Murray*, 477 U.S. at 496 ("[E]ven an isolated error of counsel [may constitute ineffective assistance] if that error is sufficiently egregious and prejudicial."); *United States v. Cronic*, 466 U.S. 648, 657 n.20

that "[n]o reasonable attorney would have allowed the *Batson* violations to go unremedied." Appellant's Br. at 39. Carew contends that Kellner should have sought *some* remedy—either selecting a new jury entirely by moving for a mistrial, "requiring the prosecutor to forfeit remaining peremptory challenges, awarding additional challenges to the *Batson* movant, or even trying to locate the released jurors." Dkt. No. 50, Appellant's Fed. R. App. P. 28(j) Letter, at 1 (citing *People v. Luke*, 227 N.Y.S.3d 252, 261 (1st Dep't 2025)). We disagree. Applying the appropriate deference to Carew's trial counsel's strategic decision, we conclude that a reasonable attorney in Kellner's circumstances could well have chosen to forgo a *Batson* remedy, and Carew has therefore failed to rebut the presumption that his counsel did so strategically.

Kellner performed reasonably in spotting a potential *Batson* issue, raising the challenge, and successfully arguing that two of the prosecution's three peremptory strikes were racially discriminatory. The court then proposed the adequate *Batson* remedy of seating the struck jurors as alternates, *see McCrory*, 82 F.3d at 1247 (suggesting that reseating struck jurors to remedy *Batson* violations

---

(1984) ("[S]pecific errors and omissions may be the focus of a claim of ineffective assistance as well." (citing *Strickland*, 466 U.S. at 693–96)).

would be an adequate remedy), which Kellner reasonably accepted. However, when the court announced that it was unable to provide that remedy because of its own administrative error, Kellner was left with a difficult choice: whether to press for an alternative remedy or proceed with the jury as selected. We conclude that it was reasonable for Kellner to proceed with the selected jury as he did.

Based on the record, Kellner's decision not to seek an alternative remedy may very well have been strategic. Assuming *arguendo* that it was possible for the trial court to retrieve the two jurors who had been dismissed and sent home, a reasonable lawyer may have declined to seek their return. Those struck jurors may have been hostile or resentful toward the defense had they been required to return and sit for a lengthy trial after they had already been dismissed. As to "discharg[ing] the venire and select[ing] a new jury from a panel not previously associated with the case," the other remedy expressly discussed in *Batson*, 476 U.S. at 99 n. 24, Kellner may have reasonably preferred the jury that was already selected to a new, unknown jury, as the district court observed, s*ee Carew*, 2023 WL 8258690, at *6. As Carew explains, "counsel may have been reluctant to risk ending up with a jury he was [even] less satisfied with." Appellant's Br. at 47.

25

Carew's speculation about other, alternative remedies that Kellner could have proposed, such as the court granting additional peremptory challenges to the defense or removing peremptory challenges from the prosecution, amounts to the "second-guess[ing]" and employment of the "distorting effects of hindsight" that *Strickland* forbids. 466 U.S. at 689. Even if these remedies were available and beneficial to the defense—on which point the record is unclear[11]—Kellner's failure to seek what may appear in hindsight as an optimal remedy does not amount to deficient performance. *See Burt v. Titlow*, 571 U.S. 12, 24 (2013) ("[T]he Sixth Amendment does not guarantee the right to perfect counsel . . . ."). Instead, on these facts, after Kellner had raised a *Batson* challenge and accepted a permissible remedy, and after circumstances beyond his control rendered that remedy unavailable, it was at least reasonable for Kellner to decline to press the issue further and proceed with a jury that he may well have preferred to the unknown.

---

[11] For instance, as to seeking additional peremptory challenges, the record suggests that Carew still had several remaining: He used two after the *Batson* challenge, App'x at 287, 289, and did not use close to the number provided by New York Criminal Procedural Law for trials in which the highest crime charged is a class A felony, *see* N.Y. Crim. Proc. Law § 270.25(2)(a) (stating that each side must receive twenty peremptory challenges for the regular jurors and two for each alternate juror to be selected).

Ultimately, it does not matter which, if any, of these strategic rationales Kellner may have had in mind; what matters is that Carew has not met his burden of rebutting our presumption that Kellner's *Batson* choices were the result of sound strategy, rather than of incompetence. *See Dunn*, 594 U.S. at 739 (explaining that the petitioner cannot overcome the presumption of reasonableness of defense counsel's decisions merely based on an "absence of evidence" that counsel acted for a particular strategic reason). The record does not support Carew's contention that no reasonable counsel would have acted as Kellner did; instead, it shows that Kellner was fully aware of the opportunity to raise *Batson* issues and made strategic choices about when and how to do so. *Cf. Drain v. Woods*, 595 Fed. App'x 558, 582 (6th Cir. 2014) (unpublished opinion) (contrasting case in which "[c]ounsel's passivity in light of an obvious pattern of strikes against minority prospective jurors fell below an objective standard of reasonableness and amounted to deficient performance" (quotation marks omitted)). Applying *Strickland* deference to Kellner's decision, we conclude that a reasonable attorney, acting strategically and in the best interests of his client, could have chosen, as Kellner did, to forgo continuing to seek a *Batson* remedy.

Carew's reliance on prevailing professional norms to establish deficient performance is unavailing. Citing the American Bar Association's ("ABA") Criminal Justice Standards for the Defense Function, Carew contends that, under prevailing professional norms, "counsel was obligated to protect petitioner's constitutional rights," an obligation that, he claims, Kellner breached by "surrender[ing] petitioner's equal protection and due process rights."[12] Appellant's Br. at 40-41 (citing ABA Criminal Justice Standards for the Defense Function 4-1.2(b) (4th ed. 2017)). These "prevailing norms of practice as reflected in American Bar Association standards and the like are guides to determining what is reasonable" under *Strickland*. *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010) (alterations adopted) (quotation marks omitted).

However, the ABA Standards do not do the heavy work of establishing trial counsel's deficient performance as Carew claims. Notwithstanding counsel's general obligation to protect a criminal defendant's constitutional rights, it is well established that defendants and their counsel may waive those rights for strategic reasons. For example, with the client's consent, defense

---

[12] Carew does not appear to argue that trial counsel is required to gain the client's affirmative consent before waiving a *Batson* remedy; instead, Carew appears to challenge counsel's ability to waive a *Batson* remedy under *any* circumstances.

counsel may waive many of a defendant's fundamental constitutional rights, such as the rights "to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." *Gonzalez v. United States*, 553 U.S. 242, 250–51, (2008) (quoting *Florida v. Nixon*, 543 U.S. 175, 187 (2004)). Although Carew appears to take issue with waiver of *Batson* remedies altogether—an issue we examine further below— rather than with Kellner's decision to waive those rights without his client's consent, we note that the Supreme Court has repeatedly held that counsel may also waive certain of their client's rights without the client's express consent, because "[t]he adversary process could not function effectively if every tactical decision required client approval." *Taylor v. Illinois*, 484 U.S. 400, 418 (1988).

These strategic choices generally relate to "how best to *achieve* a client's objectives," rather than "what the client's objectives in fact *are*." *McCoy v. Louisiana*, 584 U.S. 414, 422 (2018). So, for instance, without the client's express consent, counsel may consent to a magistrate judge presiding over jury selection in a felony trial, *see Gonzalez*, 553 U.S. at 250, waive the speedy trial right, *see New York v. Hill*, 528 U.S. 110, 115 (2000), and make certain decisions that implicate their client's due-process rights, such as what arguments to make, what evidentiary objections to raise, and what agreements to make with the

prosecution regarding the admission of evidence, *see id.* (collecting cases).

Indeed, the same ABA standards on which Carew relies also recognize that

"[s]trategic and tactical decisions should be made by defense counsel," including

"what jurors to accept or strike."   ABA Criminal Justice Standards for the

Defense Function 4–5.2(d) (4th ed. 2017).  In sum, neither prevailing professional

norms nor the caselaw suggests that Kellner rendered constitutionally deficient

assistance of counsel by declining to seek a *Batson* remedy for strategic reasons.

**B.**     ***Whether Counsel's Failure to Seek a* Batson *Remedy Amounts to* Per Se *Ineffective Assistance of Counsel***

Carew also argues that, even if Kellner had strategic reasons to forgo a

*Batson* remedy, "that is not a legitimate reason to let the prosecutor's racial

discrimination go unremedied" because "there was no legitimate basis to allow

the 'evil' of racial discrimination in jury selection to go unremedied."

Appellant's Br. at 42, 47.  Failing to object to the lack of a *Batson* remedy, Carew

argues, would be to "take [an] illegal action[], such as sanctioning discrimination

against potential jurors based on race . . . even if counsel believes such

discrimination would benefit his client."  *Id.* at 48.  In effect, Carew argues for a

*per se* rule that it is ineffective assistance of counsel to fail to pursue a remedy for

the prosecution's *Batson* violation, even when a remedy would be deleterious to

30

the criminal defendant.[13]   We decline to adopt such a rule because it would impinge upon trial counsel's principal duty to his client.

As an initial matter, we reject Carew's attempt to impute the prosecution's racially discriminatory exercise of its peremptory challenges to Kellner.  Carew argues that by failing to remedy the violation, defense counsel "effectively, and impermissibly, sanctioned the prosecutor's racially discriminatory peremptories."  Appellant's Br. at 41.  We are unpersuaded for two reasons.  First, it is true that defense counsel is "limited to legitimate, lawful conduct." *Nix v. Whiteside*, 475 U.S. 157, 166 (1986).  But the cases on which Carew relies prohibit defense counsel from *affirmatively* engaging in prohibited behavior, rather than failing to correct the prosecution's unlawful acts.  For example, in *Nix*, on which Carew relies, the Supreme Court merely explained that "counsel is precluded from taking steps or in any way assisting the client in presenting false evidence or otherwise violating the law."  *Id.* (holding that defense counsel does not render ineffective assistance when he informs his client that if the client were

---

[13] Our caselaw has repeatedly recognized that counsel's failure to object to the discriminatory use of peremptory challenges may waive or forfeit the *Batson* issue, but these cases do not address whether that waiver or forfeiture amounts to ineffective assistance of counsel.  *See McCrory*, 82 F.3d at 1249; *United States v. Brown*, 352 F.3d 654, 663 (2d Cir. 2003).

to offer perjured testimony, he would be obligated to disclose the client's perjury to the court and move to withdraw from representation). Similarly, in *Georgia v. McCollum*, the Supreme Court extended *Batson* to hold that defense counsel's "discriminatory exercise of a peremptory challenge is a violation of equal protection." 505 U.S. at 55. But, again, Kellner did not use *his* peremptory challenges in a racially discriminatory manner—at most, he failed to seek a remedy to correct the *prosecution's Batson* violation.

Second, although the prosecution may violate *Batson* by failing to provide a race-neutral explanation for striking a prospective juror, *Batson*, 476 U.S. at 97, it does not follow that defense counsel would necessarily also lack a race-neutral—and therefore permissible—reason for striking the same juror. Prospective jurors, like all people, occupy multiple statuses and positions: A juror may share the same race as the defendant but have some other characteristics, such as their employment, that make them undesirable for jury selection from the defendant's perspective and are legitimate grounds for the exercise of peremptory challenges. *See Jordan*, 206 F.3d at 200 ("[N]egative experience with law enforcement, age, life experience, type of employment, and

demeanor [] have been found to be acceptable race neutral bases for peremptory challenges").

In a hypothetical case—and one not dissimilar from that before us—in which the defendant is alleged to have shot a police officer, the defendant may reasonably not want a police officer seated on the jury, even if the defendant and the police officer share the same race or sex. So, even if the prosecution strikes the police officer for a racially discriminatory reason, defense counsel would not violate *Batson* by not seeking to have that same juror seated, so long as that decision was based on the juror's status as a police officer (or on any other similarly legitimate, non-discriminatory reason for not wanting the juror seated). Defense counsel's failure to object, in this hypothetical example, would not be based on the impermissible use of a juror's race as "a proxy for determining juror bias or competence." *Powers*, 499 U.S. at 410. Thus, it would not itself violate *Batson*.

Most fundamentally, Carew's proposed rule—requiring counsel to always pursue a *Batson* remedy, even where it might harm his client—would swallow the longstanding principle that an attorney's principal "duty is not to the public at large" but to "the undivided interests of his client." *Ferri v. Ackerman*, 444 U.S.

193, 204 (1979). Of course, as discussed above, this rule has limits, as counsel may not affirmatively engage in prohibited conduct. *See, e.g.*, *McCollum*, 505 U.S. at 58 (explaining that "a prohibition of the exercise of discriminatory peremptory challenges [does not] violate a defendant's Sixth Amendment right to the effective assistance of counsel . . . . [because] neither the Sixth Amendment right nor the attorney-client privilege gives a criminal defendant the right to carry out through counsel an unlawful course of conduct"). But were the rule that Carew advances to prevail, defense counsel would need to subordinate his client's interests to a broader duty to correct the prosecution's racially discriminatory use of peremptory strikes. Indeed, as this hypothetical illustrates, it might be wholly legitimate for defense counsel not to want a police officer seated as a juror in a police-shooting case, even if the prosecution strikes that same juror for impermissible reasons. To conclude, as Carew urges, that defense counsel must *always* correct the prosecution's racially discriminatory exercise of its peremptory strikes would trap defense counsel between competing obligations—*Batson* on the one hand, the client's best interests on the other. That tension would undermine the bedrock principles upon which our adversarial system is based, including the Sixth Amendment right to counsel.

34

To be sure, we do not suggest that defense counsel's failure to object to racial discrimination in jury composition or to seek a remedy can never be the basis for a meritorious ineffective assistance of counsel claim. For example, in *Drain v. Woods*,[14] after defense counsel failed to object to the prosecutor's use of seven of her nine peremptory strikes against Black prospective jurors, the trial court *sua sponte* challenged the prosecutor's use of her peremptory challenges. 595 F. App'x at 561. The trial court rejected the prosecutor's stated, race-neutral reasons for striking the jurors and found that the prosecutor "consistently excluded [B]lack jurors based on their race"; however, the court "took no action to undo the effects of the prosecutor's racially-motivated strikes on the composition of the jury." *Id.* at 562–63. Defense counsel was entirely silent during the court's colloquy with the prosecutor and did not object to the court's failure to impose a *Batson* remedy. *See id.* at 561–63. In affirming the district court's grant of habeas relief, the Sixth Circuit concluded that defense counsel's performance was deficient because "any reasonable attorney would have objected to the trial court's decision to proceed without either recalling those

---

[14] The Sixth Circuit has subsequently appeared to back away from portions of *Drain*, *see Parks v. Chapman*, 815 F. App'x 937, 943–45 (6th Cir. 2020) (unpublished opinion), but we consider its facts and reasoning illustrative as a point of contrast.

who were dismissed or beginning *voir dire* again with an entirely new venire."

*Id.* at 583.

As *Drain* illustrates, where defense counsel's failure to lodge a *Batson* challenge or seek a *Batson* remedy results from "oversight, carelessness, ineptitude, or laziness," *Wilson*, 570 F.3d at 502 (quotation marks omitted), rather than sound trial strategy, a successful ineffective assistance of counsel claim may arise. But, in the appeal before us, we cannot conclude that Kellner lacked strategic reasons for proceeding as he did.

Nor do we countenance the unremedied *Batson* violation before the trial court. Notwithstanding that we conclude that defense counsel may decline to press for a *Batson* remedy for strategic reasons, we recognize that the prosecution's impermissible exercise of its peremptory challenges violates not only the defendant's Fourteenth Amendment equal protection rights but also those of the struck jurors. *Batson*, 476 U.S. at 87. But we decline to impose an obligation on defense counsel to correct the prosecution's misconduct at the expense of the criminal defendant's interests.[15] Instead, we view the ultimate

---

[15] Indeed, application of Carew's proposed rule, viewed in this light, would be particularly perverse, because the right to effective assistance is a right that, unlike the

obligation to protect the integrity and fairness of judicial proceedings as residing

with the attorney exercising their peremptory challenges and the trial court. As

such, both the prosecution and defense counsel are prohibited from exercising

their peremptory challenges in a racially discriminatory manner, *see Batson*, 476

U.S. at 89; *McCollum*, 505 U.S. at 57, and, by the rules of professional conduct,

from "engag[ing] in conduct that the lawyer knows or reasonably should know

is . . . discrimination on the basis of race . . . in conduct related to the practice of

law." ABA Model Rule of Professional Conduct 8.4(g); *see also* New York Rule of

Professional Conduct 8.4(g)(1) (prohibiting a lawyer from "engag[ing] in conduct

in the practice of law that the lawyer . . . knows or reasonably should know

constitutes . . . unlawful discrimination"). And the trial court is the ultimate

guarantor of the integrity of its proceedings. When a court is confronted with an

attorney's racially discriminatory exercise of their peremptory challenges, it has

broad discretion to fashion a remedy. *See Batson*, 476 U.S. at 99 n. 24 (leaving to

trial courts the task of determining how to remedy *Batson* violations); *McCrory*,

---

equal protection right protected by *Batson*, belongs to the defendant alone and is designed to provide the defendant with the services of legal counsel who can effectively contest the prosecution's case to protect the defendant from an unjust conviction. It would be peculiar to hold that a defendant was denied his *personal* right to effective assistance of counsel because counsel failed to protect a separate right held by a potential juror in order to secure the defendant's best chance of avoiding a conviction.

82 F.3d at 1247 (discussing possible remedies). But it must impose some remedy, lest it be automatically reversed on direct appeal without recourse to harmless error review. *See Rivera v. Illinois*, 556 U.S. 148, 161 (2009).

Based on the record before us, it seems that both the prosecution and the trial court breached their respective obligations to remove the taint of racial discrimination in jury compositions, "a primary example of the evil the Fourteenth Amendment was designed to cure." *Batson*, 476 U.S. at 85. It is a peculiarity of the strictures of habeas, however, that Carew must press an argument against his own trial counsel—who ultimately succeeded in securing an acquittal for Carew on the most serious charges—to challenge the prosecution's and trial court's failures under *Batson*.[16] It was not defense counsel

---

[16] Notwithstanding the unremedied violation of the prospective jurors' rights, we think that the denial of habeas relief is sensible on these facts because granting Carew's habeas petition would allow him to get a second bite at the apple by receiving the benefit of two trials. In the context of a *Batson* challenge, "the nature of the peremptory challenge mandates that any objection to its use be raised and ruled upon promptly" so that the judge can properly assess the challenge and fashion a remedy if appropriate. *McCrory*, 82 F.3d at 1247. If the defendant fails to object but could nonetheless later bring the *Batson* claim, "the defendant may have the opportunity to test his fortunes with the first jury, preserving the opportunity for a mistrial and a second round in the event of a conviction." *Id.* This would not only consume judicial time and resources and induce defendants to not press challenges when the court can properly remedy the constitutional violations, *see id.*, but it would also disparately treat other criminal defendants who properly preserved their *Batson* objections and would not receive the benefit of a second trial. In sum, because we conclude that Kellner acted strategically, it

who exercised his peremptory challenges in a racially discriminatory manner—it was the prosecution. Nor was it defense counsel who erroneously sent struck prospective jurors home or failed to fashion an adequate remedy—it was the trial court. That the prosecution and trial court breached their *Batson* duties does not, however, establish that Kellner breached his duty to Carew, at least on these facts.

Because Carew has failed to establish deficient performance of counsel under the first prong of *Strickland*—which he identifies as the sole error on appeal—he has not shown the ineffective assistance of counsel needed to overcome his procedural default and permit us to consider his *Batson* claim on its merits. Consequently, he cannot obtain habeas relief.[17] We decline to accept

would make little sense to allow Carew to have a first trial before a jury that his counsel may have preferred and a second trial thereafter.

[17] Because Carew failed to meet the first prong of *Strickland,* deficient performance of counsel, we need not decide whether a meritorious *Batson* claim automatically establishes prejudice under the second prong of *Strickland*, a question that has split our sister circuits. Because a *Batson* error is structural, the "effect of [which] cannot be ascertained," *Vasquez v. Hillery*, 474 U.S. 254, 263 (1986), without assuming that "the race of jurors affects their thinking as jurors," *Eagle v. Linahan*, 279 F.3d 926, 943 n.22 (11th Cir. 2001)—an inquiry that *Batson* forbids—the majority of courts of appeals have concluded that a meritorious *Batson* claim automatically establishes prejudice under *Strickland, see, e.g.*, *Juniper v. Davis*, No. 16-2, 2023 WL 3050984, at *3 (4th Cir. Apr. 24, 2023) (unpublished opinion); *Winston v. Boatwright*, 649 F.3d 618, 632 (7th Cir. 2011); *Eagle*, 279 F.3d at 943 n.22. However, in two recent unpublished decisions, the Third and Sixth Circuits have required a habeas petitioner to show that the result of the trial

Carew's invitation to impose upon defense counsel the obligation to correct the prosecution's *Batson* violation even where strategic considerations may militate against doing so.

## CONCLUSION

Based on the foregoing, we conclude that Carew has failed to demonstrate ineffective assistance of trial counsel to overcome procedural default on his *Batson* claim. The judgment of the district court denying Carew's habeas petition is therefore **AFFIRMED**.

---

would have been different absent the *Batson* violation, rather than merely a successful *Batson* claim. *See Hutchinson v. Superintendent Greene SCI*, 860 F. App'x 246, 249–50 (3d Cir. 2021) (unpublished opinion) (denying habeas petition and holding that there was "no reason to relieve [petitioner] of the obligation to demonstrate prejudice" when arguing that his attorney's failure to pursue a *Batson* challenge amounted to ineffective assistance of counsel); *Parks*, 815 F. App'x at 943–45 (denying habeas petition and concluding that petitioner failed to prove prejudice associated with procedurally defaulted *Batson* challenge).

LOHIER, *Circuit Judge*, concurring:

I join the panel's excellent opinion in full. I write separately only to note that the petitioner's unexcused procedural default prevents us from directly reviewing the trial court's decision. As a result, it remains an open question in this Circuit whether a trial court faced with and aware of an unquestionably clear *Batson* violation must of its own accord attempt to find a remedy even in the absence of an objection by either party. In my view, the logic of *Batson* and its progeny virtually compels the conclusion that the trial court has an independent obligation to "eliminate the taint of racial discrimination" in the jury selection process, *Powers v. Ohio*, 499 U.S. 400, 402 (1991); *see Georgia v. McCollum*, 505 U.S. 42, 49–50 (1992), which "harms not only the accused" when the Government promotes it but also "the excluded juror," *Batson v. Kentucky*, 476 U.S. 79, 87 (1986). "[R]acial discrimination in jury selection 'casts doubt on the integrity of the judicial process and places the fairness of a criminal proceeding in doubt.'" *Tankleff v. Senkowski*, 135 F.3d 235, 248 (2d Cir. 1998) (quoting *Powers*, 499 U.S. at 411). That is partly why a *Batson* violation "is a structural error that is not subject to harmless error review." *Id.*; *see also Rivera v. Illinois*, 556 U.S. 148, 161 (2009). "Be it at the hands of the State or the defense, if a court allows jurors to be

1

excluded because of group bias, it is a willing participant in a scheme that could only undermine the very foundation of our system of justice — our citizens' confidence in it." *McCollum*, 505 U.S. at 49–50 (cleaned up). If that is true, then it seems to me that the responsibility to uphold *Batson*'s core constitutional principles, if abdicated by both parties, must fall to the trial court. What if any remedy the trial court should consider or undertake under those circumstances is also a question for another day.